**Rosie WILLIAMS, Plaintiff–Appellant,**

v.

**WILLIAMS ELECTRONICS, INC., et al., Defendants–Appellees.**

No. 87–2357.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 22, 1988.

Decided Sept. 7, 1988.

Susan Marie Connor, Chicago, Ill., for plaintiff-appellant.

Mark L. Shapiro, Rudnick & Wolfe, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, COFFEY, and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

Rosie Williams appeals from the district court's order entering summary judgment in favor of Williams Electronics, Inc. in a racial discrimination case Williams brought under Title VII, 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. § 1981. We affirm.

I

In November, 1983, Williams Electronics, Inc. laid off Rosie Williams, a black woman, from her position as an electronics technician in Williams Electronics' engineering department. This layoff was part of a November 4, 1983, reduction in force (RIF) occasioned by operating losses Williams Electronics suffered from a strong downturn in video games sales. As a result of this RIF, 70 of Williams Electronics' salaried employees were laid off. In the engineering department two of six electronics technicians were laid off. Rosie Williams and an Hispanic technician were the technicians laid off, while four white technicians retained their positions. Rosie Williams was the most senior electronics technician at the time of the RIF.

The decision concerning which employees were to be laid off was made by the engineering vice president, Ron Crouse. Crouse had not personally observed or supervised the work of any of the electronics technicians. Therefore, he instructed the Director of Engineering, Don Hassler, to recommend the employees of the Engineering Department that were to be laid off. Hassler's recommendations were to be based upon Hassler's "judgment as to

which employees would best keep the department running after the reduction in staff," and not upon seniority. Hassler made his recommendations with the advice and concurrence of the head of mechanical engineering, Walter Smolucha. Hassler and Smolucha both stated that they had an opportunity to observe firsthand the work of all six engineering technicians.[1] Based upon their alleged observations, Hassler and Smolucha determined that Williams was "not as technically competent as the four electronics technicians retained. Specifically, she was not as proficient in the trouble-shooting of microprocessing electronic circuitry."[2] Accordingly, Hassler recommended to Crouse that Rosie Williams be laid off, and Crouse followed this recommendation.

Rosie Williams had not been counselled concerning her job performance at any time immediately prior to her layoff. However, Williams Electronics claims it gave pay raises based upon performance in November 1982. During that period Rosie Williams received a mere 2.6 percent wage increase, while the other electronics technicians received increases ranging from 8.3 to 9.7 percent. However, Rosie Williams stated that the group leader advised her that her increase had been limited by budgetary constraints.

Rosie Williams claimed that her observations of the work of other electronics technicians led her to believe that she performed her work as well or better than they did. However, she was unaware of the specific qualifications and expertise of her fellow technicians. Rosie Williams also offered an affidavit of a former Williams Electronics' supervisor, Fred Griffin, who stated that he had observed Rosie Williams' work and that he had found her to be a good trouble-shooter and one of the company's best employees. Griffin's affidavit did not specifically compare Williams'

---

1. To the contrary, Rosie Williams stated that neither attempted to observe her work firsthand.

2. Trouble-shooting involves the use of electronic equipment, such as an oscilloscope and logic analyzer, to determine why a wire-wrapped pro-

totype does not function properly. The former engineering vice president agreed that, as of May 1983, Rosie Williams' performance in this regard was not as strong as that of the electronics technicians who were retained.

922

performance to that of the four retained technicians. He also stated that he believed that Rosie Williams' reduction resulted from racial discrimination.

Following her layoff, Rosie Williams received a letter of recommendation from her group leader, Chuck Bleich, dated November 28, 1983, stating that she was a competent employee. Rosie Williams believed that Bleich earlier had given her inferior work assignments on a racially discriminatory basis. However, Bleich was not involved in the decision to lay off Williams. Rosie Williams also had heard from another employee that some of her fellow technicians had said that a black person should not be working as an electronics technician. None of these individuals were involved in the layoff decision.

II

This case presents us with the same application of Title VII disparate treatment methodology in the context of a summary judgment as was involved in *Beard v. Whitley County, REMC,* 840 F.2d 405, 409–410 (7th Cir.1988). In *Beard* we described our responsibilities in reviewing a grant of such a summary judgment in the following fashion:

"A motion for summary judgment should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In reviewing a grant of summary judgment, we must view the record and all inferences drawn therefrom in the light most favorable to the party opposing the motion. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Illinois v. Bowen,* 808 F.2d 571, 574 (7th Cir.1986). However, when confronted with a motion for summary judgment, a party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations that there is a *genuine* issue of material fact which requires trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party must do more than simply 'show that there is some metaphysical doubt as to the material facts.' *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted). 'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party there is no "genuine issue for trial." ' *Id.* at 587, 106 S.Ct. at 1356 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). 'The court should neither "look the other way" to ignore genuine issues of material fact, nor "strain to find" material fact issues where there are none....' *Secretary of Labor v. Lauritzen,* 835 F.2d 1529, 1534 (7th Cir.1987) (quoting *Mintz v. Mathers Fund, Inc.,* 463 F.2d 495, 498 (7th Cir.1972))."

*Beard,* 840 F.2d at 409–410.

▮▮ In determining whether a genuine issue of material fact is present we must consider both the substantive law of employment discrimination and the burdens of proof applicable under this law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 252–256, 106 S.Ct. 2505, 2510, 2512–2514, 91 L.Ed.2d 202 (1986). The United States Supreme Court has set forth a specific scheme for allocating the burdens and order of proof in a Title VII disparate treatment case.[3] Initially, "the [employee] has the burden of proving by the preponderance of the evidence a prima facie case of discrimination." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–253, 101 S.Ct. 1089, 1093–1094, 67 L.Ed.2d 207 (1981). In the

3. *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–253, 101 S.Ct. 1089, 1093–1094, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–805, 93 S.Ct. 1817, 1824–1826, 36 L.Ed.2d 668 (1973).

This same scheme applies to Rosie Williams' claim under 42 U.S.C. § 1981. *See Yarborough v. Tower Oldsmobile, Inc.,* 789 F.2d 508, 511–512 (7th Cir.1986).

case of a reduction in force, a prima facie case is established with a "showing that [the employee] was within the protected [class], that [the employee] was performing according to his employer's legitimate expectations, that [the employee] was terminated, and that others not in the protected class were treated more favorably."[4] Once a prima facie case has been demonstrated to the satisfaction of the court, "the burden shifts to the [employer] 'to articulate some legitimate nondiscriminatory reason' "[5] for its action. This burden is only one of production, as the "ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the [employee] remains at all times with the [employee]." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. If the employer carries its burden of production, the employee has "an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." *Id.* (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed. 2d 668 (1973)). A pretext may be demonstrated "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. In the case of either method of proof the evidence must, in the final analysis, demonstrate that race "was 'a determining factor, in the sense that [the employee] would not have been [laid off] "but for" [the] employer's motive to discriminate against [the employee] because of [race].' " *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986) (quoting *La Montagne v. American Convenience Products, Inc.,* 750 F.2d

1405, 1409 (7th Cir.1984) (citations omitted)). *See also North v. Madison Area Association for Retarded Citizens,* 844 F.2d 401, 406 (7th Cir.1988); *Germane v. Heckler,* 804 F.2d 366, 368 (7th Cir.1986) (Noting that in Title VII disparate treatment case ultimate determination is whether discriminatory intent was a "but for" cause of the adverse action).

As the district court correctly noted, there is little doubt that Rosie Williams and Williams Electronics respectively satisfied the first two portions of the disparate treatment proof allocation scheme. Rosie Williams made out a prima facie case by demonstrating that she was black, that she was evidently performing in a basically satisfactory fashion,[6] that she was terminated and allegedly that white electronics technicians were treated more favorably. Similarly, there can be little doubt that Williams Electronics articulated legitimate non-discriminatory reasons for Rosie Williams' layoff when it stated that it allegedly laid off employees on performance-related bases and that it had determined through acceptable management practices that Rosie Williams was not as technically competent as the retained electronics technicians. *See Bechold v. IGW Systems, Inc.,* 817 F.2d 1282, 1284–1285 (7th Cir. 1987) (A layoff decision is legitimate and non-discriminatory if it is "genuinely and honestly made in an attempt to select the employees to be retained on the basis of performance related considerations").

The summary judgment decision, then, turns upon whether there exists a genuine issue of fact material to the question of whether the reasons Williams Electronics articulated for Rosie Williams' layoff were

---

4. *Oxman v. WLS–TV,* 846 F.2d 448, 455 (7th Cir.1988). Although *Oxman* was an age discrimination case, its prima facie case definition was made under standards applicable to Title VII cases.

5. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)).

6. A determination that an individual is performing a job well enough to meet an employer's legitimate expectations, when made in the context of a prima facie case, may be based solely upon the employee's testimony concerning the quality of his work. *See Yarbrough v. Tower Oldsmobile, Inc.,* 789 F.2d 508, 512 (7th Cir. 1986).

pretexts for discrimination.[7] Rosie Williams' attempts to show that Williams Electronics' explanation was a pretext for discrimination both through evidence designed to show that the employer's explanation is unworthy of credence and through evidence seeking to demonstrate that racial discrimination was the employer's more likely motivation.

Rosie Williams presents her own assertions concerning the relative quality of her work, the assertions of a former supervisor concerning Williams' work quality, her seniority level and certain other circumstances surrounding the employer's layoff decision in her attempt to show that Williams Electronics' explanation of her layoff is unworthy of credence. In cases of this nature, we have previously observed that we do "not sit as a super-personnel department that reexamines an entity's business decisions." *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986). We do not determine whether the employer exercised prudent business judgment. *See id.* We determine only whether Williams Electronics' layoff decision actually involved an attempt to select employees on the basis of performance-related considerations and was genuinely and honestly made. *See Dorsch v. L.B. Foster Co.,* 782 F.2d 1421, 1427 (7th Cir.1986).

■ Initially, Rosie Williams' own self-interested assertions concerning her abilities are not in themselves sufficient to raise a genuine issue of material fact. *See Dale,* 797 F.2d at 464–465 (Employee's self-interested, conclusory assertions of his own ability insufficient to contradict an employer's negative assessment of that ability). The addition of former supervisor Griffin's affidavit does not significantly alter the situation. His general assertions concerning Rosie Williams' abilities, which did not explicitly weigh her abilities against those of the retained technicians, do not create a basis upon which it can be concluded that Williams Electronics did not genuinely and

honestly weigh performance-based considerations in making its layoff decision. In this respect this case resembles *Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1218, 1223 (7th Cir.1980), in which this court affirmed a district court's determination that a former employee's presentation of "judgments of some who thought his work was good" were insufficient to contradict an employer's business judgment that the employee's work was unsatisfactory.

The addition of the remaining evidence on this issue also does not create a basis upon which a reasonable trier of fact could find that the employer's explanation of a genuinely and honestly made performance-based decision was unworthy of credence. Rosie Williams' seniority is largely irrelevant to this determination, since performance was the sole criterion for Williams Electronics' decision. While the similarity of the affidavits of each of Williams Electronics' supervisors might lead one to question whether they accurately portrayed these supervisors' opinions of Williams' job performance, the decision to layoff Williams was also one based on a consensus concerning her performance level. Rosie Williams' allegations concerning Hassler's and Smolucha's lack of opportunity to observe her work may be the evidence which most damages Williams Electronics' claim that its layoff decision was based upon the electronics technicians' relative job performances. However, even the addition of this evidence to the conclusory allegations of Williams and her former supervisor appears simply to question the employer's business judgment. This evidence does not raise the doubt about the genuineness and honesty of the employer's layoff decision making process necessary for a reasonable jury to be able to rule that Williams demonstrated by a preponderance of the evidence that she would not have been laid off "but for" the employer's motive to discriminate against her because of her race.

---

7. We would note that we have previously held that a summary judgment may resolve questions of motivation. *See Beard v. Whitley County, REMC,* 840 F.2d 405, 409–410 (7th Cir.1988).

However, we approach the considerations relevant to summary judgment with utmost caution when such issues are raised. *See id.*

Rosie Williams' evidence, designed to directly demonstrate that race more likely motivated the employer's layoff decision, does not appreciably aid her cause. Both the alleged discriminatory work assignments and discriminatory comments were attributable to individuals who were not involved in the layoff decision. Although Williams Electronics might be responsible for the actions of these individuals in a case in which the actions themselves were claimed to be discriminatory, the actions fall short of forming a basis for demonstrating that the non-discriminatory explanations for decisions made by other individuals were pretexts. *Compare La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1412 (7th Cir.1984) (The statements of two individuals not involved in a discharge decision, prior to the decision, do not aid in demonstrating that explanations of the actions of the decision maker were pretexts for discrimination) *with Oxman v. WLS–TV*, 846 F.2d 448, 456 (7th Cir.1988) (The statement of the individual informing an employee of a discharge decision, made after the decision, was relevant to the finding of whether the employer's reasons were pretexts for discrimination in a case in which it could reasonably be inferred that the statements of the informing individual were authorized by the decision maker).

The combination of direct and indirect evidence provides an insufficient basis for a rational trier of fact to conclude that Williams demonstrated by a preponderance of the evidence that Williams Electronics' explanation for her layoff was a pretext for discrimination and that this layoff would not have occurred "but for" Williams Electronics' discriminatory motivation. Accordingly, we hold that a genuine issue of material fact does not exist and that Williams Electronics is entitled to summary judgment as a matter of law. The judgment of the district court is

AFFIRMED.