966 F.2d 1456
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Gregory LEE, Plaintiff/Appellant,
v.
ILLINOIS DEPARTMENT OF CORRECTIONS, Richard J. Partak and
Dennis L. Jensen, et al., Defendants/Appellees.
 No. 90-3216.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 8, 1992.*
Decided June 22, 1992.
 
 Before BAUER, Chief Judge, and FLAUM and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Gregory Lee filed a complaint alleging violations under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and 42 U.S.C. § 1981. The district court granted the defendants' motion for summary judgment. For the reasons stated in the district court's opinion, we AFFIRM the grant of summary judgment.[1]
 
 THE UNITED STATES DISTRICT COURT
 THE NORTHERN DISTRICT OF ILLINOIS
 EASTERN DIVISION
 
 2
 GREGORY LEE, Plaintiff,
 
 
 3
 v.
 
 
 4
 ILLINOIS DEPARTMENT OF CORRECTIONS, RICHARD J. PARTAK,
 
 
 5
 DENNIS L. JENSEN and VERA CUNNINGHAM, Defendants.
 
 No. 89 C 06447
 
 6
 Sept. 17, 1990.
 
 MEMORANDUM OPINION
 
 7
 This Title VII case is before us on defendants' motion for summary judgment. For the reasons stated below we grant the motion.
 
 FACTS
 
 8
 Plaintiff Gregory Lee, a black, brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17. He alleges that his former employer, the Illinois Department of Corrections ("IDOC") and certain of its agents, Richard J. Partak, Dennis L. Jensen, and Vera Cunningham, failed to promote him because of his race.
 
 
 9
 Defendant IDOC employed Lee at Stateville Correctional Center ("Stateville"), a maximum security prison, from July 1979 until March 1987. Lee Dep. at 5-8. IDOC initially hired Lee as a Correctional Therapy Worker in the Leisure Time Services ("LTS") department at Stateville. Id. at 5. As a Correctional Therapy Worker, a position Lee held for approximately two and one-half years, he was responsible for assisting and providing recreational activities for inmates. Id. at 5-7; Lee Aff. at pp 2-3. He supervised recreational programs such as basketball and flag football. Lee Aff. at p 2.
 
 
 10
 In October 1981, IDOC demoted Lee, along with fifteen other blacks in the same job category, into the position of Correctional Officer.[1] Lee Aff. at p 3; Lee Dep. at 7. Lee held this position until he resigned in March 1987. Lee Dep. at 8.
 
 
 11
 IDOC classifies its positions in the LTS department as Corrections Leisure Activities Specialist ("CLAS") I, II, III and V, the entry position being CLAS I and the top supervisory position being CLAS V. Partak Aff. at pp 1-2. Defendant Partak held a CLAS V position and supervised the LTS department. Id. He directly supervised defendants Jensen and Cunningham. Id. Partak, Jensen, and Cunningham are white. Lee Aff. at p 9.
 
 
 12
 On or about July 1984, a CLAS II position became available. Partak Aff. at 3; Lee Aff. at 7. Lee, along with three others, applied for the position and Partak, Jensen, and Cunningham interviewed them. Partak Aff. at pp 4-5. The other three applicants were Tom Schonauer, Dannie Smith, and Jeff Witfield. Partak Aff. at p 4. Schonauer and Whitfield are white and Smith is black. Id. Partak had final authority to decide who to recommend for promotion. Partak Aff. at p 5.
 
 
 13
 The panel selected Schonauer for the CLAS II position over the other candidates. Partak Aff. at p 6. Apparently, Schonauer never accepted the position. However, IDOC never told Lee that Schonauer did not take the position nor did it give him another chance to interview for that position. Id. at p 18.
 
 
 14
 According to Partak, the interview panel unanimously chose Schonauer over Lee based on Schonauer's work experience and performance and knowledge of the LTS department. Partak Aff. at p 6. He held a CLAS I Position for a little over a year prior to his selection. Partak Aff. at p 9; Lee Dep. at 16-17. During that year, Schonauer served 3 1/2 months as a CLAS III, one rank above the CLAS II position. Partak Aff. at p 7; Partak Dep. at 49. He had a B.A. in recreation, Lee Dep. at 15, and Partak was familiar with Schonauer's work performance and qualifications. Partak Aff. at p 8. Schonauer also interned at Centralia Correctional Center ("Centralia") for 16 weeks prior to joining IDOC. Lee Dep. at 15-18. According to Partak, Schonauer was an excellent employee and had been nominated as Employee of the Month at Stateville three times prior to his promotion over Lee. Partak Aff. at p 7.
 
 
 15
 Lee disputes that Schonauer was an excellent employee, noting that Schonauer's personnel file indicates that he had received two written reprimands, a one day suspension, and a furnish proof letter.[2] Plaintiff's Statement Pursuant to Local Rule 12(m) as to Material Facts That are in Dispute at p 13; Lee Aff. at p 19 and Ex. B.
 
 
 16
 Partak's only knowledge of Lee's work performance and qualifications was from Lee's application and interview. Partak Aff. at p 8. As noted above, Lee had not worked in the LTS department since 1981, but he did have two and one-half years experience in that department. Lee Dep. at 5-7; Lee Aff. at p 3. He also had, at the time of the interview, four years experience as a correctional officer at Stateville.[3] Lee Aff. at p 11. Also at the time of the interview, Lee had a B.A. in physical education and was six credit hours away from obtaining a master's degree in Correctional Criminal Justice. Lee Aff. at p 12. In addition to his educational experience, Lee had interned at the Champaign County Swim Club while in undergraduate school, the Safer Foundation, and IDOC's Jesse "Ma" Houston Community Correctional Center while in graduate school. Id. at pp 13-14.
 
 
 17
 Lee informed his interviewers of his educational background, work experience and seniority with IDOC, id. at p 16, and presented them with a copy of his resume and a transcript of his graduate courses. Id. at p 10; Lee Dep. at 19. The interviewers asked him numerous questions regarding his participation in the lawsuit over his demotion. Lee Aff. at p 17.
 
 DISCUSSION
 
 18
 Under Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment if there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "A genuine issue of material fact exists only where 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.' " Dribeck Importers, Inc. v. G. Heileman Brewing Co. Inc., 883 F.2d 569, 573 (7th Cir.1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). In determining a motion for summary judgment, we must view all inferences in the light most favorable to the nonmoving party. Regner v. City of Chicago, 789 F.2d 534, 536 (7th Cir.1986). Once a party has supported its motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings." Fed.R.Civ.P. 56(e). The adverse party's response, by affidavit or otherwise, "must set forth specific facts showing that there is a genuine issue for trial." Id.
 
 
 19
 "In determining whether a genuine issue of material fact is present we must consider both the substantive law of employment discrimination and the burdens of proof applicable under [Title VII]." Williams v. Williams Elects. Inc., 856 F.2d 920, 922 (7th Cir.1988). In a Title VII case alleging discriminatory treatment, the law imposes the following burdens on the litigants. First, "the plaintiff must establish by a preponderance of the evidence proof creating a prima facie case of discrimination." Chesser v. State of Illinois, 895 F.2d 330, 333 n. 3 (7th Cir.1990) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). In order to establish a prima facie case of failure to promote, plaintiff must establish (1) that plaintiff belongs to a protected class, (2) that plaintiff was qualified for and applied for a promotion, (3) that plaintiff was considered for and denied the promotion, and (4) that other employees who were not members of the protected class were indeed promoted at the time plaintiff's request for a promotion was denied. Johnson v. Brock, 810 F.2d 219, 223 (D.C.Cir.1987); Dugan v. Ball State University, 815 F.2d 1132, 1136 (7th Cir.1987).
 
 
 20
 Once plaintiff establishes a prima facie case, an inference of discrimination is raised, and the court will presume " 'that the employer's actions, if unexplained, were more likely than not the result of impermissible factors.' " Chesser, 895 F.2d at 333 n. 3 (quoting Andre v. Bendix Corp., 841 F.2d 172, 175 (7th Cir.), cert. denied, 488 U.S. 855 (1988)). In such a case, the defendant employer must explain its actions or lose. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). The burden therefore shifts to the defendant employer " 'to articulate some legitimate, nondiscriminatory reason' for the plaintiff's disparate treatment." Chesser, 895 F.2d at 333 n. 3. This burden is one of production only, for "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Williams, 856 F.2d at 923 (quoting Burdine, 450 U.S. at 253).
 
 
 21
 If the defendant employer carries its burden of production, the presumption of discrimination raised by plaintiff's prima facie showing disappears. Chesser, 895 F.2d at 333 n. 3 (citing United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983)). Plaintiff "must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Burdine, 450 U.S. at 253; Williams, 856 F.2d at 923. Plaintiff may demonstrate a pretext " 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.' " Williams, 856 F.2d at 923 (quoting Burdine, 450 U.S. at 256). In the final analysis, the evidence must show "that race was a determining factor, in the sense that [the plaintiff] would [have been promoted] but for the employer's motive to discriminate against [the plaintiff] because of race." Williams, 856 F.2d at 923 (quotations omitted) (citations omitted).
 
 
 22
 Defendants proffer two reasons for promoting Schonauer rather than Lee. First, they contend that Lee was not qualified for the CLAS II position. Thus, defendants argue that Lee failed to establish a prima facie case of race discrimination. Second, even if Lee were qualified, defendants assert that Schonauer was equally qualified for the position. Viewing the record before us and all inferences drawn therefrom in the light most favorable to Lee, we cannot agree with defendants' assertions that Lee was unqualified, but do conclude that there is no genuine issue as to whether Lee was more qualified than Schonauer.
 
 
 23
 We find that Lee has made out a prima facie case of discrimination. He is black, was qualified for the position for which he applied, was considered for and denied the promotion and the promotion was offered to Schonauer, a white. As to Lee's qualifications for the job, the CLAS II position required "knowledge, skill and mental development equivalent to completion of four years college with a Bachelor's degree in ... recreation, ... [or] physical education." Lee had a B.A. in physical education and was six hours short of a master's in Correctional Criminal Justice. The position also required "one year professional experience in providing leisure activity recreation in an institution, community setting, physical education program;" "working knowledge of Corrections regulations, [and] policies;" "working knowledge of the attitudes, problems and behavior of individuals and groups in a correctional setting;" and security training. Lee met these qualifications. He had 2 1/2 years experience in providing leisure activity recreation at Stateville; an additional four years as a correctional officer; graduate courses in Correctional Criminal Justice; and three internships. Lee Aff. at pp 11-14.
 
 
 24
 Having established a prima facie case, the burden is on defendants to rebut the presumption of discrimination by articulating "some legitimate, nondiscriminatory reason" for defendants' promotion of Schonauer over Lee. Burdine, 450 U.S. at 253. A decision is legitimate and nondiscriminatory if it is "genuinely and honestly made in an attempt to select the employees ... on the basis of performance related considerations." Bechold v. IGW Syss., Inc., 817 F.2d 1282, 1284-85 (7th Cir.1987), cited with approval in Williams, 856 F.2d at 923. We find that defendants have met their burden of production. Defendants' proffered reason is that Partak had direct knowledge of Schonauer's performance as a CLAS I and considered him an excellent employee who, prior to his promotion, had served temporarily as a CLAS III, one rank above the position to which he was promoted, and had been nominated as Employee of the Month at Stateville three times.
 
 
 25
 Lee disputes defendants' assertions that Schonauer was an excellent employee or that Schonauer was as qualified as Lee. He refers us to Schonauer's disciplinary record and to his own qualifications as well as to the CLAS II job description. Lee argues that based on the criteria that the interviewers told him they would use to evaluate the applicants, namely, education and experience in Corrections and recreation, he was the most qualified. Lee Dep. at 15, 18-19. According to Lee, he had more education and experience in the LTS department and in Corrections than any of the other applicants. Lee Dep. at 19.
 
 
 26
 We do not agree with Lee that he was the most qualified for the CLAS II position. Based on the CLAS II job requirements, Schonauer was equally qualified for the position. First, as to disciplinary records, we note that Lee's personnel file contained four written reprimands, three oral reprimands, a three day suspension and two 1-day suspensions. Lee Aff. at p 19 and Ex. B. Thus, Schonauer's disciplinary record, if anything, was better than that of Lee.
 
 
 27
 Next, Lee's and Schonauer's educational backgrounds, as well as experiences in the LTS department and in Corrections, are comparable in terms of the CLAS II job requirements. Schonauer clearly met the educational requirements for the job. He had a B.A. in recreation and had interned for 16 weeks at Centralia prior to joining IDOC as a CLAS I. Schonauer also satisfied the professional experience requirements for the job. He had been in the LTS department for a little over a year prior to the CLAS II job opening. We note that Schonauer's experience in the LTS department was more recent than Lee's, who had not worked in that department since October 1981. Schonauer served as a CLAS I and also temporarily as a CLAS III, one rank above a CLAS II.
 
 
 28
 Schonauer's work performance was excellent. According to Partak, Schonauer served as a CLAS III, which requires a higher level of performance in both scheduling staff and programs than Class II, for 3 1/2 months and performed this job at a "high level." Partak Dep. at 49. Schonauer's performance as a CLAS III demonstrated to Partak that Schonauer could perform the duties of a CLAS II at an "exceedingly high level." Id. Partak further found that Schonauer was very familiar with both "our operation" and "with the scope of operation for the facilities." Id. at 50. Lee has not presented any evidence to refute Partak's testimony with respect to Schonauer's performance or knowledge.
 
 
 29
 Title VII does not demand that employers give preferential treatment to minorities. Burdine, 450 U.S. at 259. Nor does it require an "employer to hire the minority ... applicant whenever that person's objective qualifications were equal to those of a white male applicant." Id. It allows an employer "to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." Id.
 
 
 30
 Lee has not provided us with any facts suggesting that defendants' reasons for choosing Schonauer over Lee were a pretext for discrimination. Indeed, defendant admits that other than failure to promote him, he has no other reason to think defendants have a racial bias against him. Lee Dep. at 20. There is no evidentiary basis on which we could find that Lee was more qualified than Schonauer for the CLAS II position.
 
 CONCLUSION
 
 31
 Defendants' motion for summary judgment is granted
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 We need not consider whether Mr. Lee's successful challenge to an earlier demotion on the basis of race created a genuine issue of material fact precluding summary judgment as to whether the reasons given by the employer were pretextual. Mr. Lee makes no such argument on appeal. See Deeming v. American Standard, Inc., 905 F.2d 1124, 1129 (7th Cir.1990)
 
 
 [1]
 Lee and the other affected black employees successfully challenged this demotion with the Illinois Civil Service Commission and recently prevailed in the Illinois Appellate Court. Lee Aff. at pp 4-5; Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment at 5. However, Lee does not offer evidence that the demotion was made on the basis of race, nor does he state the grounds upon which the Commission found the demotion improper. Even if we assumed that the demotion was on the basis of race, as Lee's attorney contends, Lee has not alleged that any of the individual defendants in this case were involved in that decision
 
 
 [2]
 Lee does not provide us with any definition of "a furnish proof letter."
 
 
 [3]
 Although Lee states in his affidavit that he had four years experience as a correctional officer at the time of his interview, our math indicates that he had under three years experience (from 10/81 until 7/84). Nonetheless, we will use Lee's figure