165 F.3d 32
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Thomas D PORTER, Plaintiff-Appellant,
v.
ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES, et al.
Defendants-Appellees.
 No. 98-1152.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 29, 1998.*
Decided Nov. 23, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 95-CV-4077. George W. Lindberg, Judge.
 Before Hon RICHARD A. POSNER, Chief Judge, Hon. JOHN L. COFFEY, Hon DIANE P WOOD, Circuit Judges.
 
 ORDER
 
 1
 Following his discharge as an investigator for the Illinois Department of Children and Family Services ("DCFS"). Thomas Porter filed suit alleging that DCFS fired him because of his race, color, and age in violation of federal law In particular, Porter asserted claims against DCFS under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act, and claims against various officers of that agency under 42 U.S.C. § 1983. The district court granted the defendants motion for summary judgment on all of Porter's claims. Porter now appeals. We affirm.
 
 Background
 
 2
 Thomas Porter is a light-skinned African-American male who was sixty-five years old when DCFS hired him as a child protection investigator in May of 1993. Complaints concerning Porter's work performance first surfaced in August of 1994, when his supervisor, Marcia Williams,[1] approached her own supervisor, Kathy Glenney, about problems she was having with Porter's work. On August 4, 1994, Glenney convened a predisciplinary hearing to review charges that Porter had violated DCFS procedures by failing to make ongoing attempts to see child abuse victims and failing to complete required notifications in response to abuse or neglect allegations made against child care facilities After reviewing the charges, Glenney prepared a predisciplinary report recommending that Porter receive a one-day suspension. The Labor Relations Department, which has final authority in imposing discipline, adopted her recommendation.
 
 
 3
 Williams prompted Glenney to convene a second predisciplinary hearing on November 4, 1994 in order to consider two further sets of charges The first arose out of an incident described in a letter written by an Assistant States' Attorney ("ASA") with whom Porter was supposed to prepare testimony for a custody hearing Apparently the ASA and Porter got into an argument when Porter refused to answer her questions about the case and would not indicate whether he had read the case file When the ASA informed him that she was going to report back to his supervisor, he allegedly told her she had better watch out when she went to her car. Glenney, after confirming this story through conversations with the ASA and a witness, recommended a ten-day suspension
 
 
 4
 The second set of charges concerned Porter's poor work performance One charge alleged that Porter had failed to make ongoing attempts to see victims in fifteen cases Another asserted that Porter's work in four cases was of poor quality, with problems including failure to obtain a juvenile court order as instructed, failure to address particular allegations of abuse, failure to prepare for or attend certain hearings, failure to cooperate with ASAs and other DCFS personnel, and failure to contact children thought to be at risk A final charge alleged that Porter, after accumulating a large backlog of cases, had failed to meet a specific deadline for reducing his caseload After consulting with Williams and her own supervisor and seeking guidance from the Labor Relations Department. Glenney recommended that Porter be discharged. The Labor Relations Administrator agreed and passed the recommendation on to the Director of Illinois Central Management Services who made the final decision to fire the plaintiff. Porter was suspended pending discharge on December 17, 1994 and was terminated for cause on January 16, 1995.
 
 
 5
 Meanwhile, sometime in November or December of 1994, Marcia Williams filled out an employee evaluation form covering the period from July 1993 to October 1994, noting that Porter had not achieved any of his annual performance objectives and that he needed improvement in each of the nine categories of a general performance appraisal. In particular, the evaluation noted that Porter needed constant guidance because of his inability to comply with instructions and that be often had to have work returned to him Williams recommended that Porter retake the child protection investigator training program. Porter alleges that he did so in November or December of 1994. Porter did not, however, receive a copy of this evaluation. Moreover, this was the first and only evaluation form Williams completed on Porter, despite DCFS procedures that contemplate quarterly evaluations.
 
 
 6
 Porter bases his claims largely on his own testimony. Porter contended in his deposition that DCFS's claims about the quality of his work were not true. He asserted that he followed DCFS procedures and that his work was well done. However, he offered no specific evidence supporting his assertions and he did not address any of the charges made against him with specificity Porter also testified that he was treated differently than other investigators who were not light-skinned black males over forty In his deposition, Porter identified individuals who were supposedly treated more favorably, but he did not offer any testimony or other evidence demonstrating that these people were similarly situated. He further claimed that his work assignments were not returned to him by supervisors other than Marcia Williams Again, however, he did not provide specific evidence to support this claim.
 
 
 7
 Most significantly, Porter asserted that statements by Marcia Williams and Kathy Glenney indicate that his termination was motivated by racial bias. In an affidavit, Porter attested. "During one of my first meetings with Marcia [Williams] soon after she became my supervisor, she told me that she did not like light-skinned African-American men and that she was going to get rid of me before my probationary period was over." As for Kathy Glenney, Porter claimed that she supposedly told him that she had "nothing to do with what is being done to you," in an alleged admission of the conspiracy against him
 
 Analysis
 
 8
 We review a district court's grant of summary judgment de novo, construing the evidence and the inferences drawn from it in the light most favorable to the non-moving party Courtney v. Biosound, Inc. 42 F.3d 414, 418 (7th Cir1994) Summary judgment is proper where there is no genuine issue of material fact such that judgment is proper as a matter of law Fed R. Civ P 56(c), Courtney. 42 F 3d at 418 "This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues" Vanasco v. National-Louis Univ. 137 F 3d 962, 965 (7th Cir1998) (internal quotes omitted) Nevertheless, where the non-moving party bears the burden of proof on an issue "he or she must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact requiring trial" Courtney. 42 F 3d at 418
 
 I. Title VII
 
 9
 To defeat a motion for summary judgment on a claim of intentional race or color discrimination under Title VII, a plaintiff must present sufficient evidence to raise an inference that race or color was a motivating factor in his discharge See 42 U S C § 2000e-2(m)(1994) There are two ways to make this showing See Cowan v. Glenbrook Sec Servs, 123 F 3d 438, 442 (7th Cir.1997). The plaintiff can proceed directly and introduce direct or circumstantial evidence to show that his termination was motivated in some part by race or color. Alternatively, the plaintiff can proceed indirectly and rely on the burden-shifting scheme described in McDonnell Douglas Corp. v. Green, 411 U.S. 792(1973) and Texas Dept. of Community Affairs v Burdine, 450 U.S. 248 (1981). Porter pursues both methods of proof.
 
 A. Direct Proof
 1. Direct Evidence
 
 10
 Porter points to Marcia Williams's and Kathy Glenney's alleged statements as direct evidence of intentional discrimination However, only Williams's alleged statement qualifies as direct evidence since Glenney's statement cannot be interpreted as an admission of discriminatory intent without reliance on inference or presumption. See Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir1994) Thus, for Porter to successfully prove his case with direct evidence. Williams's alleged statement must raise an inference that intentional discrimination was a motivating factor in Porter's discharge
 
 
 11
 DCFS argues that Williams's alleged statement cannot shoulder this burden. First it asserts that because Marcia Williams was not the ultimate decision-maker with respect to Porter's termination, any discriminatory animus that she allegedly expressed cannot be considered a motivating factor in the decision to terminate Porter. In proving intentional discrimination, only the motivation of the ultimate decision-maker is relevant. Chiaramonte v. Fashion Bed Group, Inc, 129 F 3d 391, 395 (7th Cir1997). But, this court has imputed the bias of an inferior employee to an ultimate decision-maker when the inferior employee has had significant influence on the ultimate decision See Dey v. Colt Constr & Dev. Co., 28 F.3d 1446, 1459 (7th Cir1994), Shager v. Upjohn Co. 913 F.2d 398, 405 (7th Cir.1990). This appears to be the case here Marcia Williams, as Porter's supervisor initiated all of the charges against Porter and presented the primary evidence against him. Moreover, Glenney consulted with Williams in making her recommendation to discharge Porter At the very least, Porter has raised a question of material fact as to Williams's role in his termination.
 
 
 12
 DCFS further argues that Marcia Williams's alleged statement is merely a stray remark. To prove intentional discrimination, the evidence "must not only speak directly to the issue of discriminatory intent it must also relate to the specific employment decision in question" Cowan v. Glenbrook See Servs, Inc. 123 F 3d 438, 443 (7th Cir1997) (quoting Randle v. LaSalle Telecomms, Inc. 876 F 2d 563, 569 (7th Cir1989)) (discriminatory stray remarks do not relate to employment decisions) Porter suggests that the required connection between the discriminatory remark and the employment decision is provided by the fact that Williams did exactly what she said she would--attempt to get him fired--by rejecting his work and fabricating charges against him The defendants argued and the district court agreed that in order to establish this connection Porter had to produce evidence showing that his work was satisfactory or that he was unfairly singled out for discipline Porter v State of Ill, Dep't of Children and Family Servs., 987 F.Supp. 667, 673 (N.D.Ill.1997).
 
 
 13
 This, however, is not correct. If an employee's race or color is a motivating factor in an adverse employment action, the employee can prevail under Title VII regardless of other justifications the employer may have had for its decision or how it treated other employees. 42 U.S.C. §§ 2000e-2(m), 2000e-5(g)(2)(B) (1994). Thus, an admission that bias played a role in the decision, such as where a supervisor tells an employee he is being discharged because of his race, is sufficient by itself to connect the discriminatory intent and the employment decision. Cowan, 123 F.3d at 444, Venters v. City of Delphi, 123 F.3d 956, 972-73 (7th Cir.1997). Of course, Williams's alleged statement is slightly more ambiguous than this (Williams doesn't explicitly say she will get rid of him "because" of his color and Porter was discharged after, rather than before, his probationary period ended). But, we have noted in the past that perfect admissions are not required for a statement to be direct evidence, Venters, 123 F.3d at 973, and that the task of "disambiguating ambiguous utterances" is for the jury, Shager, 913 F.2d at 401. Williams said she did not like men of Porter's color and that she was going to try to get rid of him Construing the facts and inferences in Porter's favor, as we must, this statement stands as an admission of exactly what Porter must show to prevail--that his supervisor was motivated at least in part by his race and/or color when she took actions that significantly contributed to Porter's termination.
 
 
 14
 The matter, however, does not end here Under Price Waterhouse and the 1991 Civil Rights Act Amendments, if a plaintiff proves that discrimination was a motivating factor in the adverse employment action, the burden of persuasion shifts to the employer. Price Waterhouse v. Hopkins. 490 U.S 228 (1989). 42 U S C § 2000e-5(g)(2)(B) (1994). If the employer proves that it would have taken the adverse action in the absence of discrimination, it can limit the plaintiff's relief to attorney's fees, costs, and declaratory and certain injunctive relief. 42 U.S.C. § 2000e-5(g)(2)(B)(i) (1994) However, because relief remains available even if the employer makes such a showing, we have noted that summary judgment will "rarely (if ever) be appropriate" where the plaintiff presents evidence reasonably suggesting that an impermissible factor played a motivating role in an adverse employment decision. Venters, 123 F.3d at 973 n. 7. The employer can prevail on summary judgment only if its evidence as to the legitimate reasons for the employment decision "eliminates any doubt as to whether [an impermissible factor] played at least a motivating role" in the decision Id at 974
 
 
 15
 DCFS offers substantial evidence that Porter's work performance was of poor quality He apparently neglected his cases, failed to follow instructions, and was uncooperative The problem with this evidence is that most of it is tainted by its connection to Marcia Williams. Compare Shager v. Upjohn Co. 913 F 2d 398, 405 (7th Cir1990) (supervisor set up plaintiff by assigning him a poorly performing territory, tainting objective measure of performance) If Porter's recounting of Williams's alleged statement is to be believed, the fact that Williams complained to her superiors about the quality of Porter's work is equally consistent with Porter's theory of the case as it is with DCFS's The mere fact that Williams is linked to much of the evidence of Porter's work deficiencies, however, cannot save Porter's case
 
 
 16
 First, one important piece of evidence, the letter from the Assistant State's Attorney, has no connection to Williams, and in fact, Kathy Glenney independently verified the incident described therein. This letter clearly demonstrates the poor quality of Porter's work performance on at least one occasion. Moreover, the letter circumstantially confirms two complaints Williams voiced about Porter's performance--namely, his neglect of his cases and his uncooperativeness Second, some of the evidence, such as that concerning Porter's neglect of his caseload, is objective in nature. It is based on Porter's failure to document in the case files the completion of assigned tasks. It is hard to imagine how Williams could have tainted this evidence. The fact that Kathy Glenney reviewed the charges against Porter and Porter had an opportunity to defend himself against the charges bolsters this conclusion. While the record does not indicate how Porter defended himself, it would be easy for Porter to refute and Glenney to evaluate fabricated charges based on this kind of objective evidence. Finally, Porter only generally denies DCFS's characterization of his work--he presents no specific evidence of the quality of his work and does not respond with particularity to the specific charges levied against him. In short, while there is significant evidence indicating that Porter's work performance was of poor quality, there is no evidence suggesting the contrary
 
 
 17
 In light of the fact that Porter's only direct evidence is a single statement made a year-and-a-half prior to his discharge, the evidence concerning the quality of Porter's work performance is sufficient to eliminate any doubt as to whether race and/or color played a motivating role in the decision to discharge him
 
 2. Circumstantial Evidence
 
 18
 Circumstantial evidence will raise an inference of intentional discrimination and allow a plaintiff to prevail if, taken together, it presents a "convincing mosaic of discrimination against the plaintiff" Troupe v. May Dep't Stores Co. 20 F 3d 734, 737 (7th Cir.1994). Porter points to the statements of Williams and Glenney, a lack of feedback on his performance, the less favorable treatment he received in comparison to others, and the fact that he was not given an opportunity to improve his performance after retaking the investigator training course as evidence of discrimination on DCFS's part However, this evidence falls short of presenting a "convincing mosaic of discrimination"
 
 
 19
 First, his allegations of less favorable treatment cannot be given any weight because there is no indication that the people be claims were treated better were similarly situated. There is no proof that their work is of comparable quality or even that Williams supervised these employees Second. Porter's claim that he did not receive feedback is also dubious He asserts that he did not receive his November 1994 evaluation and that he should have received quarterly evaluations However, by his own admission Porter did receive substantial feedback He had a predisciplinary hearing in August 1994, and he had his cases frequently handed back to him Moreover, there is no indication that other employees received the quarterly evaluations of which he was deprived Third, the fact that Porter was not given a chance to improve his performance after retaking the investigator training course is not particularly persuasive. Indeed, the fact that he was asked to retake the course is persuasive evidence that his performance actually was subpar.
 
 
 20
 As for the statements of Williams and Glenney, read favorably to Porter, they do suggest intentional discrimination may have been a motivating factor. But, even when coupled with any inferences that can be fairly drawn from the other circumstantial evidence, these statements fail to establish a "convincing mosaic of discrimination," in light of the abundant evidence suggesting DCFS discharged Porter because of the poor quality of his work.
 
 B. Indirect Proof
 
 21
 To prove a Title VII discrimination claim indirectly under the burden-shifting framework established by McDonnell Douglas, the plaintiff must first establish a prima facie case of discrimination by showing (1) he was in a protected group, (2) he was performing his job satisfactorily, (3) he suffered an adverse employment action, and (4) he was treated less favorably than similarly situated employees outside the protected class. See Cowan v. Glenbrook Sec. Servs, 123 F 3d 438, 445 (7th Cir.1997) Proof of the prima facie case shifts the burden to defendant to articulate a legitimate non-discriminatory reason for the employment decision. Id. If the employer satisfies its burden of production, the burden shifts back to the plaintiff to demonstrate that the proffered reason is a pretext for discrimination. Id.
 
 
 22
 Porter cannot satisfy all of the elements of the prima facie case. The only evidence Porter can offer to demonstrate that his work was satisfactory are his own statements to that effect. He presents no specific evidence of the quality of his work and does not respond with particularity to the specific charges DCFS has levied at him Porter's own self-serving testimony as to the quality of his work is insufficient to establish that, contrary to DCFS's claims, he was performing satisfactorily Schultz v. General Elec Capital Corp. 37 F.3d 329, 334 (7th Cir.1994); Williams v. Williams Elecs, Inc. 856 F 2d 920, 924 (7th Cir.1988). Even if Porter could state a prima facie case, the fact that DCFS's evidence concerning the quality of his work is sufficient to overcome Porter's direct evidence would doom any attempt to prove that DCFS's stated reason for discharging him was a pretext
 
 
 23
 Because Porter has not brought forward sufficient evidence under the direct or indirect method of proof to raise an inference of race or color discrimination, we affirm the district court's grant of summary judgment to DCFS on Porter's Title VII claims.
 
 II. ADEA
 
 24
 To survive a motion for summary judgment on a claim of age discrimination under the ADEA, a plaintiff must present evidence from which an inference that age discrimination was the determinative factor in an adverse employment decision can be drawn Vanasco v. National-Louis Univ. 137 F 3d 962, 965 (7th Cir1998) As with Title VII, the plaintiff can meet this burden directly or indirectly Id
 
 
 25
 Porter, however, cannot not meet this burden in either manner. Because Porter relies on the exact same insufficient evidence he did for his race and color discrimination claims (less Marcia Williams's statement), he cannot prove his case directly. Likewise, he cannot prove his claims indirectly under the burden-shifting framework established by McDonnell Douglas, because, as noted above, Porter can neither prove that he was performing his job satisfactorily nor demonstrate that DCFS's explanation for his discharge was pretextual.
 
 
 26
 Accordingly, we affirm the district court's grant of summary judgment to DCFS on Porter's ADEA claims.
 
 III. Section 1983
 
 27
 Porter bases his Section 1983 claims on violations of the ADEA, Title VII, and the Equal Protection Clause of the Fourteenth Amendment. However, because Title VII and the ADEA provide their own comprehensive remedial schemes. Porter cannot employ Section 1983 to enforce rights created by those statutes See Great Am. Fed. Sav. & Loan Ass'n v Novotny, 442 U.S. 366, 372-78 (1979); Waid v. Merrill Area Pub Sch., 91 F.3d 857, 861-62 (7th Cir.1996); Gray v. Lacke, 885 F.2d 399, 414 (7th Cir1989) Thus, he can base his Section 1983 claims only on violations of the Equal Protection Clause
 
 
 28
 A claim of intentional discrimination under the Equal Protection Clause is subject to the same methods of proof as an analogous claim under Title VII. Riordan v. Kempiners, 831 F.2d 690, 695-96 (7th Cir1987) However, the claim must be one for intentional discrimination and that discrimination must be the "but for" cause of the adverse employment action. See Village of Arlington Heights v Metropolitan Hous Dev Corp. 429 U.S. 252, 265-66 (1977); Button v. Harden. 814 F 2d 382, 383 (7th Cir1987). Harns v Shelby County Bd. of Educ., 99 F.3d 1078, 1085 n 5 (11th Cir1996) Consequently, if the Section 1983 defendants could establish that Porter would have been fired in the absence of discrimination, they would be entitled to summary judgment With respect to Porter's race and color discrimination claims we concluded above that the evidence that Porter's work performance was unacceptable is strong enough to remove all doubt that race or color played a motivating role in the decision to discharge him. Accordingly, this evidence is undoubtedly strong enough to demonstrate that DCFS would have taken the same action in the absence of any discriminatory intent With respect to Porter's age discrimination claims, we also concluded above that the evidence failed to raise an inference of age discrimination Therefore, even assuming that firing Porter because of his age would violate the Fourteenth Amendment, summary judgment was also proper on Porter's Section 1983 age discrimination claim
 
 
 29
 In addition, there is another ground on which all but one of Porter's Section 1983 claims could be resolved Porter named all the individual defendants, except Williams, in their official capacities only His complaint refers to Jess McDonald, John Goad, Mary Ellen Eads, and Kathy Glenney only in their supervisory capacity, while it specifically notes that Marcia Williams is being sued in both her official and individual capacities Thus, because the Supreme Court has interpreted the Eleventh Amendment to prohibit damages suits against state officials named in their official capacities from proceeding in federal court in the absence of a waiver or abrogation, Edelman v. Jordan, 415 U.S. 651, 663 (1974); Gossmeyer v. McDonald, 128 F.3d 481, 487 (7th Cir.1997), and because state officials named in their official capacities are not "persons" amenable to suit under Section 1983, Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989), the claims against defendants McDonald, Goad, Eads, and Glenney could be dismissed
 
 
 30
 Finally, in his brief, Porter makes two requests. First, he makes a vague request for additional discovery. Because he did not request additional time for discovery before the district court, however, he has waived his right to raise the issue on appeal Huntzinger v. Hastings Mut Ins Co., 143 F.3d 302, 307-08 (7th Cir1998); Hessel v. O'Hearn, 977 F.2d 299, 305 (7th Cir.1992) Second, he requests, for the first time, appointment of counsel on appeal. This request is denied as moot.
 
 
 31
 We AFFIRM.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary Thus, the appeal is submitted on the briefs and the record See Fed R App P 34(a), Cir R 34(f)
 
 
 [1]
 Marcia Williams is denominated in the complaint and caption by her maiden name Marcia Thomas