Hoda ELGUINDY, Plaintiff,

v.

COMMONWEALTH EDISON COMPANY, Defendant.

No. 93 C 6996.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 16, 1995.

Steven Carl Wolf, Patrick Martin Ouimet, Linda Marion Shashinka, Wolf & Ouimet, Chicago, IL, Karen Lynn Spence, Herbert H. Victor, Chicago, IL, Herbert H. Victor, Chicago, IL, for plaintiff Hoda Elguindy.

Patrick Scott Casey, Leah Ellen Pazol, Sidley & Austin, Chicago, IL, for defendant Commonwealth Edison Company.

## *MEMORANDUM OPINION AND ORDER*

CASTILLO, District Judge.

Plaintiff Hoda Elguindy ("Elguindy") sues Defendant Commonwealth Edison Company ("ComEd"), alleging a violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Specifically, Elguindy alleges that ComEd failed to promote her to a supervisory position because of her age and retaliated against her for filing this lawsuit. Before this Court is ComEd's Motion for Summary Judgment. For the reasons set forth below, Defendant's motion is denied.

## THE FACTS

*Background*

On September 19, 1990, ComEd hired Elguindy to work as a Level 7 Engineer in its Nuclear Chemistry Services Department.[1] Elguindy was 41 years old at the time. Pl.'s Facts ¶ 6. The Nuclear Chemistry Services Department works with ComEd's nuclear operating stations in reducing, storing, and removing radioactive waste. Pl.'s Facts ¶ 7, 10. Since the nuclear operating stations are not obligated to accept the assistance of the Department, they are treated as customers of the Department. Pl.'s Facts ¶ 8, 9.

ComEd contends that during the early part of Elguindy's career, some of the operating stations complained about her inflexibility and unwillingness to listen. Def.'s Facts ¶ 13. Three station employees testified that they had various communication problems with Elguindy. Def.'s Facts ¶ 13; Britt Dep. at 68–69; Forrest Dep. at 42–52; Geer Dep. 96–105. However, other stations indicated that they were pleased with her performance and appreciative of her efforts. Pl.'s Facts ¶ 13, Ex. B; Ex. D. On her December 26, 1990, Performance Evaluation, Elguindy received a "fully meets expectations" rating, meaning her "performance and behavior consistently achieve[d] expected levels of performance. The quality and quanti-ty of work performed meet the requirements of the position." Pl.'s Facts ¶ 14, 15.

*The "Under Thirty–Five" List*

In April, 1991, Elguindy and other employees attended a meeting held by her immediate supervisor, Joseph Jirka. During that meeting, Jirka stated that ComEd had a program to encourage development of under–35–year–old employees for supervisory positions. Pl.'s Facts ¶ 16; Def.'s Facts ¶ 17, Ex. 5. As a result of that statement, Elguindy understood that she would be precluded from a supervisory position at ComEd. Elguindy Dep. at 157. ComEd asserts that Jirka was mistaken about the existence of such a policy at ComEd. Def.'s Facts ¶ 16. Shortly after the meeting, Elguindy met with Jirka personally to discuss the "Under Thirty–Five" policy. At that time, Jirka and Elguindy discussed the policy, and although Jirka did not believe that the policy precluded Elguindy from a promotion, it is unclear whether Elguindy was made aware that the policy was no longer in effect. Pl.'s Facts ¶ 17.

Elguindy attended a ComEd affirmative action meeting in October, 1991. At that meeting, Elguindy again raised the question whether ComEd maintained a policy of not promoting individuals under 35 years of age to supervisory positions. Pl.'s Facts ¶ 18. The instructor of the meeting told Elguindy that ComEd had no such policy.[2] Def's Ex.

---

1. These facts are taken from the parties' Local Rule 12(M) and (N) statements of material facts as to which there is no genuine issue, and the accompanying exhibits, as well as the various exhibits attached to the pleadings in connection with the pending motion. Defendant ComEd's 12(M) Statement of Uncontested Material Facts is cited as "Def.'s Facts ¶ __." Pursuant to Local Rule 12(N)(3)(a), Elguindy has filed a response to Defendant's statement, noting her disagreements with Defendant's facts. Elguindy's 12(N) Statement of Uncontested Material Facts is cited as "Pl.'s Facts ¶ __." Finally, Local Rule 12(N)(3)(b) allows the non-moving party to submit a statement of "additional facts that require the denial of summary judgment." Elguindy's Additional Statement of Uncontested Material Facts is cited as "Pl.'s Add'l Facts ¶ __." All properly supported material facts set forth in either party's statements are deemed admitted unless properly controverted by the statement of the opposing party. Local Rule 12(M) and 12(N)(3)(b). *See also Flaherty v. Gas Research Inst.* 31 F.3d 451, 453 (7th Cir.1994).

2. In her affidavit submitted in connection with her response to ComEd's Motion for Summary Judgment, Elguindy denies that when she asked the instructor whether ComEd had a program solely for employees under the age of 35, he told her that there had been no such program at ComEd for years. (Pl.'s Facts ¶ 18). However, such denial is not supported by the record. In her deposition, Elguindy gave the following answers.

> Q: Did he [the instructor] say anything about whether there is a current program as of October, 1991, of an under 35 list?
> A: He said as he understands the under 35 list does not no [sic] longer exist.
> Q: He told you that the under 35 list no longer exists?
> A: Yes.

The Seventh Circuit has cautioned parties against submitting affidavits in opposition to motions for summary judgment which directly contradict previously given testimony. *See e.g. Russell v. Acme–Evans Co*, 51 F.3d 64, 67 (7th Cir. 1995). When it appears that such affidavits are

A;[3] Pl.'s Dep. at 162.

From a review of the record, it is clear that ComEd had a management development program in place up until 1993. Such list was referred to as the "Under Thirty–Five" list, and later, the "Candidate Development List" or the "Promising Management Personnel Program" ("PMPP"). Def.'s Ex. 5. The description of the PMPP states:

> The program is designed to provide enhanced attention by senior department personnel to those individuals who are early in their career at Commonwealth Edison and who seem capable of developing into department heads or other senior managers at Commonwealth Edison.... [W]e will not inform individuals that they are included in the program....
>
> As can be seen from the change in criteria for the program, age is no longer important. The program is designed to provide senior management attention to promising management individuals who are in the early years of their career at Commonwealth Edison. We believe that after fifteen years at Edison, we can provide little more that will enhance the career of the individuals and they are then removed from this specific program.

In addition, a description of the Program indicated that the list "will also serve as one of several sources of candidates for the Management Development Committee to use in developing lists of persons to be considered for high level positions." Pl.'s Ex. L.[4] Finally, names of individuals reaching the age of 35 were automatically removed from the list. Pl.'s Ex. L.

In selecting individuals to the PMPP, ComEd used the following criteria: (1) having the potential to be a department manager; (2) being within the first 15 years of management career at ComEd; (3) performance in the top 20% of those individuals with less than fifteen years of experience at ComEd; (4) having been employed long enough to have a documented work history; and (5) having performed at superior level in comparison with his or her peers. Pl.'s Facts ¶ 34.

ComEd contends that these lists were merely tracking devices used by management to ensure that promising employees were exposed to many areas at the company. Def.'s Facts ¶ 36. Although Elguindy admits that being included in the list did not guarantee a promotion, she asserts that the list did in fact lead to promotions. Pl.'s Facts ¶ 36. The essence of Elguindy's claim is that since age was a criteria for inclusion in the PMPP, Pl.'s Facts ¶ 35, which in turn lead to promotions, she was unlawfully passed over for any promotions.

*Elguindy's Performance Evaluations*

On November 8, 1991, Elguindy received her 1991 annual performance overall rating of "fully meets expectations." Pl.'s Facts ¶ 19. The performance assessment of that review indicated that "[t]here are problems [in] areas when she is required to maintain an awareness of other activities occurring which relate to her areas of responsibility, which is indicative of a communication problem. Station personnel as well as individuals within the department have commented on this." Def.'s Ex. 2 at 11. However, Elguindy did receive a "fully meets expectations" on the "feedback" section of the assessment. Pl.'s Ex. F.

Elguindy also met with David Miller, Director of the Nuclear Chemistry Services Department, and Dennis Farrar, General Manager of the Nuclear Services division, to discuss her 1991 evaluation. Pl.'s Facts ¶ 21. During that meeting, Miller told her that she did not receive a higher performance rating due in part to "the feedback we got, that she [Elguindy] has a communication problem." Def.'s Facts ¶ 22, Pl.'s Dep. at 169–70.[5] At

written solely to withstand a properly supported motion for summary judgment, the facts as they appear in the deposition are deemed true. *Id.*

3. Exhibits filed by Defendant in connection with its Motion for Summary Judgment are cited as "Def.'s Ex. __".

4. Plaintiff's exhibits filed in connection with its Memorandum in Opposition to Defendant's Motion for Summary Judgment are cited as "Pl.'s Ex. __".

5. Again, Elguindy's assertions in her affidavit that Miller did not tell her why she received a lower performance rating is contradicted by her

that time, Elguindy expressed to Miller and Farrar her belief that she was being discriminated against because of her age. Pl.'s Facts ¶ 22. Miller and Farrar agreed to investigate her concerns and meet with her again in one week.

One week later, on January 14, 1992, Elguindy again met with Miller and Farrar. Elguindy was provided with examples of customer complaints in which they stated she had a communication problem. Pl.'s Facts ¶ 23. Also at that meeting, Farrar told her that Chris Herzog, Elguindy's new immediate supervisor, would meet with her regularly to give her feedback. Def.'s Facts ¶ 23.[6]

In preparation for the mid–1992 performance evaluations, Herzog sent out anonymous questionnaires to the stations to obtain feedback on the performance of his employees. Herzog told Elguindy that a number of the stations indicated that they felt that she lacked the ability to listen effectively. Elguindy Dep. at 233–34. However, other stations rated Elguindy as an effective communicator and gave her "good" ratings. Pl.'s Ex. G. As a result of the questionnaires returned to her supervisor, Elguindy's mid–1992 evaluation indicated that she needed to improve her listening skills. Pl.'s Facts ¶ 25. It was also proposed that Elguindy attend a class to improve her interpersonal management skills. Elguindy Dep. at 283.

Elguindy's 1992 performance evaluation, issued on December 3, 1992, was that she "fully meets expectations," but noted that she needed to improve her interpersonal skills. Pl.'s Facts ¶¶ 26, 27. In 1993, Elguindy's performance evaluation improved to an "exceptional" rating, meaning she "consistently generates results above those expected in the key points of the job and contributes in a superior manner." Pl.'s Facts ¶¶ 28, 29. Also in 1993, Elguindy was placed on the Candidate Development List. However, ComEd discontinued the Candidate Development List in 1993 when the company reorga-

nized and developed a new career development program. Pl.'s Facts ¶ 38.

On November 16, 1993, Elguindy filed the instant suit against ComEd. On March 17, 1994, Elguindy and her supervisor participated in a meeting with nuclear station representatives. Pl.'s Facts ¶ 39. During that meeting, Elguindy expressed her views on company procedures in an uncharacteristically strong tone, which was viewed by some of the representatives as inappropriate for the particular setting. Def.'s Facts ¶ 39; Forrest Dep. at 35–36; Geer Dep. at 111–14. However, Elguindy denies that any of the representatives were offended by her conduct. Pl.'s Facts ¶ 39.

The following day, Elguindy's supervisor told her that pursuant to a company policy, she would have to take a vacation day to attend her deposition in connection with this lawsuit. Pl.'s Facts ¶ 40. Later that day, Elguindy's supervisor reprimanded her for her conduct at the meeting the previous day. Pl.'s Facts ¶ 41.

### *ANALYSIS*

*Summary Judgment Standards*

Summary judgment is proper only if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must view all evidence in a light most favorable to the nonmoving party, *Sample v. Aldi Inc.,* 61 F.3d 544, 546 (7th Cir.1995), and draw all inferences in the nonmovant's favor. *Kirk v. Federal Property Mgt. Corp.,* 22 F.3d 135, 138 (7th Cir.1994). However, if the evidence is merely colorable, or is not significantly probative or merely raises "some metaphysical doubt as to the material facts,"

---

own deposition testimony. *Compare* Elguindy Dep. at 169–70 *with* Pl's Ex. A. Thus, this Court deems admitted the fact that Miller told Elguindy the reasons for her performance rating. *See supra,* note 2.

**6.** For a third time, Plaintiff's deposition testimony establishes that Miller told her that Herzog would meet with her directly, despite what Elguindy asserts in her affidavit. *Compare* Elguindy Dep. at 180–89 *with* Pl's Aff. ¶ 11. *See supra,* note 2.

summary judgment may be granted. *Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In making its determination, the court's sole function is to determine whether sufficient evidence exists to support a verdict in the nonmovant's favor. Credibility determinations, weighing evidence, and drawing reasonable inferences are jury functions, not those of a judge deciding a motion for summary judgment. *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513. Also, mere conclusory assertions, unsupported by specific facts, made in depositions or affidavits opposing a motion for summary judgment, are not sufficient to defeat a properly supported motion for summary judgment. *See Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990) ("[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit"); *First Commodity Traders, Inc. v. Heinold Commodities, Inc.,* 766 F.2d 1007, 1011 (7th Cir.1985) ("[c]onclusory statements in affidavits opposing a motion for summary judgment are not sufficient to raise a genuine issue of material fact").

### I. Failure to Promote Claim

■■■ Both parties agree that this case is governed by the burden-shifting method of proof set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and has been applied to ADEA claims. *See Sirvidas v. Commonwealth Edison Co.,* 60 F.3d 375, 377 (7th Cir.1995); *Schultz v. General Elec. Capital Corp.,* 37 F.3d 329, 333 (7th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 2584, 132 L.Ed.2d 833 (1995). Under this method, a plaintiff must first establish a prima facie case of age discrimination by showing that: (1) she was a member of the protected age group; (2) she was performing to her employer's legitimate expectations; (3) she was subject to a materially adverse employment actions; and (4) younger employees were treated more favorably. *Sirvidas,* 60 F.3d at

377. Once the prima facie case is established, the burden then shifts to the employer to articulate legitimate reasons for its actions. *Id.* at 377–78. If a defendant can articulate nondiscriminatory reasons for its conduct, the presumption of the prima facie case dissolves, and the burden shifts back to the plaintiff to show that the employer's articulated reasons are a pretext for discrimination. *Id.* at 378.

ComEd maintains that Elguindy has not proven the last three elements of her prima facie case. Defendant argues that because Elguindy never applied for a particular management position and was not qualified for any supervisory position, she has failed to state a claim. Mot. for Summ. J. at 4. Moreover, since no individuals in the Nuclear Services Department were promoted to supervisory positions during Elguindy's employment, ComEd argues that Elguindy cannot show that younger employees were treated more favorably in promotion decisions. Mot. for Summ.J. at 4. ComEd further states that even if Elguindy has established her prima facie case, that she is unable to show that ComEd's proffered reasons for not promoting her were pretextual. Def.'s Rep. at 12. Therefore, ComEd requests that summary judgment be entered against Elguindy.

### A. Elguindy's Prima Facie Case

■■■ Since Elguindy alleges that her employer failed to promote her because of her age, she can establish a prima facie case by showing: (1) that she was between the ages of 40 and 70;[7] (2) that she was qualified for the promotion sought; (3) that she was not promoted; and (4) that the promotion was given to a younger person. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Loyd v. Phillips Brothers, Inc.,* 25 F.3d 518, 523 (7th Cir.1994). Given the posture of this case, Elguindy need not establish proof which would allow her to prevail on the merits. Rather she must only show that there is a genuine issue of material fact with regard to each element. *See Lindsey v. Baxter*

---

**7.** Since Elguindy was within the protected age class during the period in question, both parties

agree that the first element of her prima facie case is satisfied. Mot. for Summ.Judgment at 4.

*Healthcare Corp.,* 757 F.Supp. 888, 893 n. 9 (N.D.Ill.1991).

 Initially, ComEd argues that since Elguindy never applied for a particular supervisory position, she has not satisfied the second element of her prima facie case. Mot. for Summ. J. at 4. However, when employees do not apply for particular promotions, but are rather sought out by management, the employee need only establish that had she known of an available position, she would have applied, *Box v. A & P Tea Co.,* 772 F.2d 1372, 1377 (7th Cir.1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986), and—in cases where an employer "hands out promotions on its own initiative in a nonselective, serial fashion" accepted the offered position. *Loyd,* 25 F.3d at 523.

Elguindy is unable to point to specific supervisory positions in which she expressed an interest. *Loyd,* 25 F.3d at 523; Elguindy Dep. at 113. However, it is undisputed that employees were not told that they were placed in the Promising Candidate Personnel Candidate Program. Def.'s Facts ¶ 37; Def.'s Ex. 5. Moreover, employees were not told when particular supervisory positions became available. Elguindy Dep. at 114. Given this state of affairs, Elguindy need only show that had she known of a particular position, she would have applied, *Box,* 772 F.2d at 1377, and accepted an offer. *Loyd,* 25 F.3d at 523. She has met this burden. First, Elguindy expressed her desire to be promoted to her supervisors both orally and in writing. Elguindy Dep. at 291. Further, she requested that she be enrolled in courses teaching managerial and supervisory skills. From these expressions of interest in supervisory positions, it is reasonable to infer that Elguindy would have applied for (and accepted) a supervisory position had she been made aware of one.

ComEd points to the *Box* decision to support its assertion that Elguindy's expressions of interest in supervisory positions are inadequate to show that she met the second element of her prima facie case. Mot. for Summ. Judgment at 4; Def.'s Reply at 4; *Box,* 772 F.2d at 1372. The plaintiff in *Box* cited three instances which she indicated a general desire for a promotion, in her EEOC complaint, when she told her supervisor that she wanted "to move up, in order to make more money, bookkeeper, assistant manager, whatever," and in an affidavit in which she stated she wanted to receive training so she could "advance, for instance, into the assistant manager position." 772 F.2d at 1372. In the instant case, Elguindy has shown that she explicitly expressed her desire to be promoted to a supervisory position. Unlike the plaintiff's vague statements in *Box,* it is reasonable that Elguindy would have applied to a supervisory position had one been made available to her. Moreover, interest in a particular employment position, as ComEd suggests is necessary under *Box,* has been satisfied by Elguindy's expressed desire (which was communicated to her supervisor) to be promoted to a supervisory position in certain departments. Pl.Dep. at 113. *See also Loyd,* 25 F.3d at 523.

 ComEd maintains that Elguindy has failed to show that there were any available supervisory positions in her department, and therefore has failed to satisfy the second element of her prima facie case. Mot. for Summ.J. at 5. Both parties agree that no supervisory positions became available in the Nuclear Services Department from 1990–1993. Pl.'s Facts ¶ 44; Jirka Dep. at 11–12. However, Elguindy asserts that although no supervisory positions became available in her department, such positions became available in other departments. Elguindy Aff. ¶ 15; Pls. Ex. I. Although ComEd has shown that there were no opportunities for Elguindy to be promoted in her own department, it has failed to respond to her argument that she could have been promoted to other areas in the company. ComEd's assertion that plaintiff "cannot demonstrate that a particular supervisory position was available at ComEd," Mem. at 4, is open to reasonable debate in light of plaintiff's submissions in Ex. I which show that twelve individuals who were 35 years old or younger were promoted to departments different than those in which they worked between 1990 and 1992. *See also* Pls. Ex. A., ¶ 15. This evidence demonstrates that supervisory positions within the Nuclear Services Department (to which

plaintiff's department belonged) were available. Accordingly, there is at the very least a genuine issue of material fact as to the availability of supervisory positions to which Elguindy could have been promoted but for age discrimination.[8]

■■■ Next, ComEd argues that Elguindy was not qualified for a supervisory position due to her inability to effectively communicate with the nuclear stations. Mot. for Summ. J. at 6. It states that the only evidence proffered by Elguindy is her own "self-assessment of her work performance," which is insufficient to support a prima facie case. *Id.* at 7; *Sirvidas,* 60 F.3d at 378. Elguindy is correct in replying that although her own self-assessment is insufficient at the pretext stage of analysis, to establish a prima facie case a plaintiff may rely "solely upon the employee's testimony concerning the quality of his work." *Lindsey,* 757 F.Supp. at 893 (*citing Williams v. Williams Electronics,* 856 F.2d 920, 923 n. 6 (7th Cir.1988)). Moreover, like the plaintiff in *Lindsey,* Elguindy has offered objective evidence as well as her own subjective evaluation.

Elguindy has submitted correspondence from various nuclear station personnel indicating that she was performing well. *See* Plaintiff's Ex. D. Many of these letters were addressed to Elguindy's supervisors. In addition, her 1990–1992 performance ratings were that she "fully meets expectations." Pl.'s Facts ¶¶ 14, 19, 26. Finally, many of the 1992 questionnaires returned from the operating stations rated her as a "good" communicator. Pl.'s Ex. G.

Although there is substantial evidence that Elguindy's communication skills needed improvement, *see* Farrar Dep. at 143; Pl.'s Facts ¶¶ 23, 27; Pl.'s Ex. G, this at most creates a genuine issue of material fact as to whether Elguindy was indeed qualified for a supervisory position. Again, the Court emphasizes that at this stage of the pleadings, it cannot evaluate the strength of a plaintiff's

claims to succeed on the merits. Rather, all that is necessary for the Plaintiff to survive the instant motion is for her to show that a reasonable trier of fact could find that she was qualified for a supervisory position. *See Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513. Elguindy has met that burden.

■■■ Finally, ComEd states that since Elguindy cannot show that younger employees were promoted over her, she cannot satisfy the last two elements of her prima facie case. Mot. for Summ. Judgment at 7–8. ComEd argues that participation in the Promising Management Personnel Program and the Candidate Development List was not a prerequisite for obtaining a promotion to supervisory positions. Def.'s Facts ¶ 36. Moreover, it states that age was not a consideration in determining who was added to either management development list. Def.'s Facts ¶ 35; Farrar Dep. at 103.

However, the core of Elguindy's claim is that since she and all other employees over the age of 35 were kept off the "Under Thirty–Five" list and later prevented from participation in the Promising Management Personnel Program, she was effectively denied the opportunity to be considered for a supervisor position. Pl.'s Mem. in Opposition to Summ. J. at 7–8. She alleges that although there was no guarantee that inclusion on the list or participation in the PMPP would guarantee a promotion, ComEd management used the Program as a *de facto* prerequisite for promotion. Pl.'s Facts ¶ 36.

Elguindy has proffered evidence which raises a genuine issue of material fact as to whether ComEd, either directly or through its use of the PMPP or Candidate Development List, discriminated against older individuals. Elguindy has submitted various documents which indicate that most, if not all, of the employees promoted to supervisory positions were younger than her. Pl.'s Ex. I, L. The description of the PMPP stated that "age is no longer important" in deciding

---

8. As stated in *Loyd,* 25 F.3d at 523,
 If the plaintiff alleges that the employer's decision not to approach people of her status was itself illegitimately motivated and shows that but for such a practice she likely would have been approached, then all she must do to complete the chain of causation that would permit an initial inference of discriminatory treatment actually affecting her job situation is establish that, had the employer approached her, she would have accepted the offered position.

whether an individual is placed on the list, Def.'s Ex. 5, raising the inference that at some time age *was* used as a criteria for the program. Even after ComEd changed the "Under Thirty–Five" list to the "Promising Management Personnel Program," it still was the case that individuals over the age of 35 were precluded from the program. Pl.'s Ex. L. It is a reasonable inference to conclude that ComEd maintained a policy, perhaps as an unwritten continuation of the "Under Thirty–Five" list, of passing over older employees in favor of younger ones.

Although ComEd has submitted evidence, in the form of deposition testimony, that the management development lists did not guarantee a promotion, and that any "Under Thirty–Five" list was no longer used at ComEd, Farrar Dep. at 40–41, 58–59, 103; Jirka Dep. at 130–33, such evidence indicates a genuine issue of material fact which prevents this Court from entering summary judgment. Whether any management development plans at ComEd were either in existence or applied discriminatorily as a de facto prerequisite to promotions are questions for the trier of fact.

In sum, given the procedural posture of this case and the evidence submitted by both sides, this Court concludes that Elguindy has shown that there are genuine issues of material fact which, if resolved in her favor, would establish a prima facie case of age discrimination. Although ComEd has provided substantial evidence which may defeat Plaintiff's prima facie case, weighing such evidence is not the role of this Court in deciding ComEd's motion for summary judgment. *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513.

### B. ComEd's Legitimate Nondiscriminatory Reasons for Non–Promotion

Repeating its reasons for arguing that Elguindy has not proven her prima facie case because she was not qualified for any supervisory positions, ComEd asserts that those same reasons establish a non-discriminatory reason for not promoting Plaintiff. Def.'s Reply at 12. Therefore, the burden should shift back to Elguindy to show that ComEd's reasons were merely a pretext for unlawful discrimination. *McDonnell Douglas,* 411 U.S. at 800, 93 S.Ct. at 1823. However, as discussed above, the existence of a genuine issue of material fact precludes this Court from finding that ComEd has established a non-discriminatory reason for not promoting Elguindy.

Elguindy's claim is essentially that she was qualified for a promotion to a supervisory position, and that ComEd did not promote her because of her age. ComEd responds that it was Elguindy's inability to listen and communicate effectively with the stations that prevented her from being promoted. Both sides have proffered evidence to support their claim. Elguindy has cited evaluations and correspondence from the stations that indicate that she was performing adequately. Pl.'s Ex. A; Pl.'s Ex. D; Pl.'s Ex. G. In contrast, ComEd has cited other evaluations and performance ratings which confirm its claim that Elguindy needed to improve her communication skills. Elguindy Dep. at 216; Def.'s Ex. 2; Def.'s Facts ¶ 25. It was these communication problems that ComEd maintains precluded Elguindy from promotion. Elguindy responds that the reasons were mere pretexts for age discrimination.

This Court finds that Elguindy has raised a material issue of fact as to whether the reasons given by ComEd for not promoting her were legitimate or pretextual. ComEd's proffered reason for Plaintiff's non-promotion must be viewed in light of several other facts. In the past, ComEd maintained a policy of favoring younger employees in placing individuals in management development programs. *See supra* at 15–16. Joseph Jirka, Elguindy's supervisor, knew of such policy, even though he may have been mistaken as to whether the policy remained in effect. Pl.'s Facts ¶ 15; Def.'s Facts ¶ 15. Elguindy also has submitted evidence which indicates that most, if not all, of the employees promoted to supervisory positions were under 35 years of age. Pl.'s Ex. I; Pl.'s Add'l Facts ¶¶ 10–21. Finally, Elguindy's last performance evaluation in 1993, which resulted in an "exceptional" rating, indicates that she had remedied her prior alleged communication problems.

Given this background, this Court finds that Elguindy has raised a triable issue on whether ComEd's reasons for not promoting her were genuine. Therefore, summary judgment is inappropriate.[9] *See Tibbitts v. Van Den Bergh Foods Co.,* 859 F.Supp. 1168, 1174 (N.D.Ill.1994) ("[i]n determining whether [plaintiff] presents sufficient evidence to raise a triable issue, the court considers the totality of the evidence rather than evaluating each portion piecemeal").

The Court's decision is bolstered by the Seventh Circuit's warning that a grant of summary judgment which turns on the issue of the intent of the employer should be approached with "special caution." *Courtney v. Biosound, Inc.* 42 F.3d 414, 425 (7th Cir. 1994) (quoting *Holland v. Jefferson Nat'l Life Ins. Co.,* 883 F.2d 1307, 1313 (7th Cir. 1989). *Courtney's* reasoning is applicable in this case:

> Although we are mindful that the ADEA is not a vehicle for reviewing the propriety of business decisions, the materially conflicting evidence in this case, when viewed in the light most favorable to [the plaintiff], raises a question of fact as to the believability, not necessarily the propriety of [the defendant's conduct.] Thus, even if the evidence presented by [the plaintiff] does not compel the conclusion that [the defendant] discriminated against him ... at a bare minimum it suffices to defeat [the defendant's] summary judgment motion.

*Courtney,* 42 F.3d at 425; *see also Collier v. The Budd Company,* 66 F.3d 886 (7th Cir.

---

9. Having found that there exists a genuine issue of material fact as to the legitimacy of ComEd's proffered reasons for not promoting Elguindy, it will not address the parties' discussion of whether Plaintiff has met her burden of showing the decision was a pretext for discrimination. We note, however, that this is a close case, and it survives summary judgment only because the evidence of ComEd's "under 35" policy "casts sufficient doubt on [ComEd's] proffered reasons to make summary judgment inappropriate." *Collier,* 1995 WL at * 9. This doubt, however, does not exist because we think Elguindy did not actually have a communication problem during her tenure at ComEd. The doubt exists because: (1) Elguindy's last evaluation (albeit after this lawsuit was filed) did not mention any communication problems; and (2) age—rather than communications—could have been the "true" reason for ComEd's refusal to promote the plaintiff.

Having said that, however, the Court must add that we have some concern about plaintiff's ability to satisfy her ultimate burden of proof on the issue of pretext. In the final analysis, a plaintiff who seeks to prove discrimination using circumstantial evidence must convince the jury by a preponderance of the evidence that the employer's proffered reason for the adverse employment decision was not its true reason but was a "pretext for discrimination." *St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 2751, 125 L.Ed.2d 407 (1994). According to the Supreme Court in *Hicks,* "a reason cannot be proved to 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *Id.,* 113 S.Ct. at 2752.

Although most Title VII plaintiffs stumble by failing to show that discrimination was the "real reason," in this case, the plaintiff may have less trouble proving that her age was the reason for ComEd's refusal to promote than she will proving that the asserted reason (her communication problems) was false. The evaluations documenting complaints about plaintiff's communication skills indicates that the asserted reason is not false *per se.* The jury, however, in an instruction that tracks the language of *Hicks* and which this Court is compelled to give, must find that the asserted reason for ComEd's refusal to promote plaintiff is false. The only way the jury can make that finding under *Hicks* is if it concludes that, although the evidence of communication problems exists, ComEd did not consider that factor in its promotion decisions regarding plaintiff, but instead relied exclusively on her age, an impermissible factor, to make its decisions.

Although not raised by the plaintiff, the mixed-motives analysis elucidated in *Price–Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), addresses the situation where both legitimate and illegitimate considerations play a part in the adverse employment decision. The question under a mixed-motives analysis is going to be whether the illegitimate motive was a contributing factor in ComEd's decision, and whether ComEd would have made the same employment decision even if it had not taken the impermissible factor, plaintiff's age, into account. *Id.,* 490 U.S. at 242, 109 S.Ct. at 1786. The mixed-motives analysis, however, requires the plaintiff to submit direct evidence of discrimination in order to satisfy her initial burden of proof. Because the plaintiff has not analyzed the evidence in this way, the Court is hesitant to do so at this point, despite the Supreme Court's admonition that, "[a]t some point in the proceedings ... the District Court must decide whether a particular case involves mixed-motives." *Hopkins,* 490 U.S. at 247 n. 12, 109 S.Ct. at 1789 n. 12. We will leave that issue, for now, to the plaintiff with the qualifier that at some point the Court will determine whether plaintiff can sustain her ultimate burden of proof on the issue of pretext under the *Hicks* formulation.

1995) (doubt about employee's proffered reasons should be resolved by trier of fact); *Saint Mary's Honor Ctr. v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993) (rejection of employer's proffered reasons for employment decision may permit the trier of fact to infer the ultimate fact of discrimination).

## II. *Elguindy's Retaliation Claim*

 To establish her retaliation claim, Elguindy must show that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action by her employer; and (3) a causal link exists between her protected activity and the adverse employment action. *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 321 (7th Cir.1992). Elguindy maintains that after she filed the instant suit, Chris Herzog, her supervisor, unfairly reprimanded her for her conduct at a ComEd meeting held on March 17, 1994. Pl.'s Mem. at 13–14. She states that she was merely asserting her position and that none of the station representatives present at the meeting were offended. Pl.'s Facts ¶ 39. ComEd responds by asserting that Herzog's reprimand was justified because Elguindy's statements offended several of the station representatives at the meeting. Mot. for Summ. J. at 11. Therefore, Elguindy has failed to establish the "causal link" between the filing of her suit and the reprimand. Mot. for Summ. J. at 11.

 As with Plaintiff's failure to promote claim, there exists an issue of material fact as to whether there was a causal link between Elguindy's reprimand and her filing this suit. Chris Herzog testified that he spoke with one station representative who was "disturbed" at the way the meeting went. Herzog Dep. at 7–9, 13–16. In addition, John Forrest thought Elguindy used an inappropriate tone of voice at the meeting. Forrest Dep. at 35–36. In response, Elguindy states that no one was offended at the meeting. Pl.'s Facts ¶ 39.

The questions of whether Plaintiff offended representatives present at the meeting, whether a reprimand was warranted, and whether the reprimand was commensurate with her conduct are all questions for a trier of fact. Although it appears that Herzog's conduct was done in response to Plaintiff's conduct at the March 17 meeting and not the instant case, the question of Herzog's intent is still undetermined. As such, it is inappropriate for this Court to make a determination on Elguindy's retaliation claim at this time. *See Juarez,* 957 F.2d at 321.

ComEd cites various decisions to support its claim that Elguindy should not be insulated from legitimate disciplinary conduct simple through filing a discrimination lawsuit. Mot. for Summ. J. at 12; *Dodd v. Administrator of Veteran's Affairs,* No. 81–3434, slip op. at 7 (N.D.Ill. Aug. 9, 1983); *Brenner v. Brown,* 36 F.3d 18 (7th Cir.1994); *Moore v. Borg–Warner Corp.,* No. 84–9768, 1986 WL 168 at *1 (N.D.Ill. Feb. 21, 1986). However, both *Dodd* and *Brenner* involve cases in which the merits of plaintiffs' claims were determined. Thus, at this stage, in which all inferences must be drawn in favor of Elguindy, and the Court must deny ComEd's motion if there exists a disputed issue of fact, these cases are unavailing. Finally, in *Moore,* the defendant's reasons for its conduct were based on undisputed facts. In the case at bar the reason for the reprimand, *i.e.,* whether Elguindy offended any station representatives, is disputed.

As with her failure to promote claim, Elguindy has shown that there exists a genuine issue of material fact as to Herzog's reason for reprimanding her. Therefore, summary judgment on her retaliation count is inappropriate.

### *CONCLUSION*

Accordingly, Defendant Commonwealth Edison's Motion for Summary Judgment is DENIED. A Final Pretrial Order in this case will be due on December 1, 1995. A status hearing will be held on November 1, 1995, at 9:00 a.m., for the purpose of setting a firm trial date.