**Robert E. SIRVIDAS, Plaintiff–Appellant,**

v.

**COMMONWEALTH EDISON COMPANY, Defendant–Appellee.**

No. 95–1388.

United States Court of Appeals, Seventh Circuit.

Argued July 7, 1995.

Decided July 25, 1995.

Sarah Vanderwicken, Thomas H. Geoghegan, Leon M. Despres (argued), Jeffrey C. Boulden, Despres, Schwartz & Geoghegan, Chicago, IL, for plaintiff-appellant.

Julie O'Donnell Allen (argued), Lisa D. Freeman, Sidley & Austin, Chicago, IL, for defendant-appellee.

Before POSNER, Chief Judge, BAUER and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Robert Sirvidas sued his former employer, Commonwealth Edison Company ("ComEd"), alleging that he was terminated because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634. ComEd argues that it discharged Sirvidas because of his record of poor performance and limited abilities. The district court granted summary judgment in favor of ComEd. The issue on appeal is whether Sirvidas presented enough evidence to survive a summary judgment motion by showing that ComEd's rationale for firing Sirvidas was a pretext for age discrimination. We affirm.

## BACKGROUND

Sirvidas was born in April 1940. ComEd hired him in 1969 for an entry level bargaining unit position. Over the years, Sirvidas received several promotions and moved into management. In 1989, he became a Quality Control Inspector at the Zion Nuclear Generating Station. As an inspector, Sirvidas monitored the work performed by other Zion station employees to ensure compliance with internal procedures and governmental regulations and prepared detailed reports of his inspections.

In the spring of 1992, ComEd faced serious financial problems including the loss of anticipated rate increases totalling $400 million, a court order to refund almost $250 million to its customers, an increase in operating costs and a 50% decrease in stock value. ComEd undertook a reduction in force as one of several cost-cutting measures. It told local station management to identify positions to be eliminated and personnel to be involuntarily terminated.

Thomas Joyce, Zion's station manager, formed a committee with four other senior managers to examine all positions at the station to determine which could be eliminated or consolidated and to review all personnel to decide who might take early retirement or leave voluntarily.[1] The committee also compiled a list of the poorest performers based on their "Performance Planning and Review" ("PPR") ratings. Another list named the employees whose job responsibili-

---

1. The committee members included David Wozniak, Technical Superintendent; William Kurth, Production Superintendent; Tony Broccolo, Services Director; and Norman Bresemann, Human Resources Supervisor.

ties had been specifically tailored to their limited abilities. The committee then combined the lists and sought input from the line managers regarding the performance of each person on the list.

ComEd's PPR system provides the means to evaluate each employee's performance on an annual basis. A supervisor gives the employee a numerical rating from 1 to 9. A rating from 1 to 3 indicates that the employee's performance is below acceptable and needs improvement; a rating from 4 to 6 means that the employee is "meeting expectations"; a rating of 7 or 8 signifies that the employee's performance is exceptional; and a rating of 9 indicates that the employee's performance is exceptional plus.

Sirvidas' name was on the list of poor performers because he received a PPR rating of 3 in 1989, 1990 and 1991.[2] When the committee approached the quality control supervisor Carl Schultz in 1992, Schultz identified Sirvidas as the least valuable contributor to the department. Schultz based his determination on his personal knowledge of Sirvidas' skills, Sirvidas' PPR ratings, and the opinions of his senior staff. According to Schultz, Sirvidas was not assigned the most difficult or most critical tasks in the department. Moreover, since 1986 Sirvidas' evaluations continuously noted his poor writing skills and the lack of thoroughness of his reports and recommended that he take a writing class.

Accordingly, Sirvidas' name remained on the final list of employees recommended for involuntary termination. The "Separation Justification" form stated:

> Position eliminated. Limited skills and abilities to effectively perform job. He requires continual supervision to assure tasks are completed. These limitations preclude opportunities within other station departments. Work production is below

his peers. He is the least valuable contributor in his work group.

ComEd terminated Sirvidas in August 1992.

Sirvidas filed this action in July 1993. The district court granted summary judgment in ComEd's favor because Sirvidas did not come forth with any evidence showing that ComEd's proffered reasons for termination were a pretext for age discrimination.

### ANALYSIS

■ A grant of summary judgment is reviewed de novo. *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1122 (7th Cir.1994). Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, does not establish a genuine issue of material fact and judgment is proper as a matter of law. *Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir. 1994).

■ There is no direct evidence of age discrimination in this case. Instead, Sirvidas relies on the burden-shifting method of proof set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and which has been applied to ADEA claims. *Schultz v. General Elec. Capital Corp.*, 37 F.3d 329, 333 (7th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2584, —— L.Ed.2d —— (1995). To establish a prima facie case of age discrimination under the ADEA, the plaintiff must show that he is a member of the protected age group, that he was performing to his employer's legitimate expectations, that he was subject to a materially adverse employment action, and that younger employees were treated more favorably. *Roper v. Peabody Coal Co.*, 47 F.3d 925, 927 (7th Cir. 1995); *Flaherty v. Gas Research Institute*, 31 F.3d 451, 456 (7th Cir.1994). Once a prima facie case is established, the burden of production then shifts to the employer to articu-

---

**2.** Although we could not find the numerical rating on the evaluation sheets, the parties do not dispute that Sirvidas received a rating of "3" for this time period. The evaluations indicate that in 1989, Sirvidas received a rating of +NI, that is, somewhere between "Fully Meets Expectations" to "Needs Improvement to Meet Expectations." He received a similar rating for 1990.

The "Overall Assessment" page of the 1991 evaluation is not marked. However, Sirvidas was assessed ratings of "Fully Meets Expectations," "Meets Expectations," and "Unacceptable" for the different objectives. The 1991 evaluation also indicated that Sirvidas needed the most improvement in "Knowledge of [indecipherable] Inspections" and "Effective Writing Skills."

late a legitimate, nondiscriminatory reason for its action. *Schultz*, 37 F.3d at 333. If a legitimate explanation is provided, the presumption of discrimination dissolves, and the burden shifts back to the plaintiff to show that the employer's proffered reasons are a pretext for age discrimination. *Id.* Thus, the ultimate burden of persuasion remains with the plaintiff. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). To defeat a summary judgment motion, the employee need only produce enough evidence from which a rational fact-finder could infer that the company's proffered reasons were pretextual. *Courtney*, 42 F.3d at 418. Because ComEd does not dispute on appeal that Sirvidas established a prima facie case of discrimination, the only inquiry here is whether Sirvidas produced enough evidence from which a reasonable fact-finder could infer that ComEd's proffered reasons for terminating Sirvidas were false and that he was actually discharged because of his age. *Id.*

■ The evidence Sirvidas presents is insufficient to create a genuine issue of fact as to ComEd's motives. Sirvidas submits that he was not the weakest performer in the Quality Control department and offers his own statement and a former co-worker's affidavit in support. He points to positive statements in his yearly evaluations regarding his abilities and denies that he was given less difficult or less critical assignments. In fact, he states that his "supervisors demanded and received more from me than from others in the Quality Control Department, because of my superior ability on the job." Sirvidas offers no factual support for this last statement. Moreover, isolated statements referring to some of Sirvidas' strengths do not demonstrate that he was a stronger performer than other employees in the department. *Anderson v. Stauffer Chemical Co.,* 965 F.2d 397, 403 (7th Cir.1992) ("The fact that an employee does some things well does not mean that any reason given for his firing is a pretext for discrimination").

The question is not whether Sirvidas was or was not performing satisfactorily but whether ComEd honestly believed that Sirvidas was the weakest member of the depart-ment. *Russell v. Acme–Evans Co.,* 51 F.3d 64, 69 (7th Cir.1995); *Gustovich v. AT & T Communications, Inc.,* 972 F.2d 845, 848 (7th Cir.1992). Accordingly, general averments of adequate performance by Sirvidas or a co-worker are ordinarily insufficient to create a factual issue on summary judgment; rather Sirvidas must specifically refute the facts which allegedly support the employer's claim of deficient performance. *Dey v. Colt Construction & Development Co.,* 28 F.3d 1446, 1460 (7th Cir.1994); *Anderson,* 13 F.3d at 1125; *Gustovich,* 972 F.2d at 848.

In his affidavit, Sirvidas admits that his 1986, 1987, 1989 and 1991 performance evaluations indicated that his writing skills needed to improve. At his deposition, he also indicated that his supervisor, Carl Schultz would speak to him about improving his reports:

Q: And did Mr. Schultz ever discuss any performance problems with you?

A: Yes.

Q: What were those performance problems?

A: Those were basically what we had talked earlier about. I still needed some more improvement with my paper.

Q: The same kind of improvement in terms of more detail in your reports?

A: Just make them longer.

Q: Would Mr. Schultz tell you this on an informal basis in the office or was this part of the performance evaluation or how did he let you know that you needed to make your reports longer?

A: If he thought that I needed some more—he would just come up—it would either be if it came up to the time around the performance rating he would let me know there or during the course of—before the PPRs, he would come up and address the fact that Bob, you're getting a little lackadaisical on your paperwork again.

Q: And you knew what he meant by that?

A: Yes, ma'am.

R. 15, Ex. H at 119–120. He continues later:

Q: Did Mr. Schultz remain your supervisor until your employment was terminated?

A: Yes, ma'am.

Q: Did he continue to complete PPRs for you?

A: It was either he would complete a PPR for me or he would have Gus Ponce do it.

Q: Did he continue to raise concerns about your writing ability?

A: He would bring the point of that he would like to see it get better.

R. 15, Ex. H at 129. Despite his deposition testimony, Sirvidas' affidavit states that between 1987 and 1992, Schultz spoke to him at most twice about his written reports. Although it is unclear from the deposition testimony how often Sirvidas was approached about his writing problems by Schultz or his immediate supervisors, it is clear, given the four PPR evaluations discussing his need for improvement in this area, that it was more than twice. "Where deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken." *Russell*, 51 F.3d at 67–68. Sirvidas admits in his deposition that his weak writing and reporting skills were an ongoing problem.

Nonetheless, to dispute the allegations of weak performance, Sirvidas draws our attention to a ComEd document created in 1992 which set his salary for that year. The report indicated that his performance "Meets All Expectations." The potential range for pay raises in this category was 4.0% to 5.49%; Sirvidas received a raise of 4.01%. Sirvidas argues that this piece of evidence alone demonstrates that he had met ComEd's expectations and that ComEd lied when it terminated him based on his performance.

The merit pay increase, however, does not contradict ComEd's assertion that Sirvidas was the weakest member of the Department and therefore, does not constitute evidence establishing pretext. ComEd readily admits that Sirvidas would not have been discharged had it not been forced to eliminate personnel as a result of its financial troubles. Rather, it asserts that Sirvidas was at the bottom of the group of quality control inspectors who were performing at a level satisfactory to the company before the reduction in force. Were Sirvidas to show that other quality control inspectors received lower salary increases or lower performance evaluations, he may provide enough evidence questioning ComEd's motives to survive a summary judgment motion. The mere fact that he received a pay increase is insufficient.

This court addressed a similar situation in *Aungst v. Westinghouse Electric Corp.*, 937 F.2d 1216, 1223 (7th Cir.1991). In that case, an employee was also terminated during a reduction in force because according to the company, he was the least versatile engineer in the department. To establish pretext, the employee submitted evidence of satisfactory performance reviews and a merit pay increase. *Id.* We held that such evidence did not rebut the specific reason advanced by the company for the discharge because it was Aungst's versatility and not his competence in his narrow area of expertise which was at issue. *Id.;* [3] *see also Gustovich*, 972 F.2d at 848 (plaintiffs' evidence demonstrating the adequacy of their performance was insufficient to establish pretext since they were discharged because they were the weakest supervisors). Similarly, Sirvidas' merit pay increase, the lowest possible increase in the "Meets All Expectations" category, does not rebut the fact that ComEd considered him the least productive member in the department.

The only other evidence Sirvidas submits is his affidavit alleging that his co-workers Tim Stack and Richard Leigh were far less experienced than he and therefore, not as valuable or productive. According to Sirvidas, both Stack and Leigh had fewer certifications than he and neither of them had the skill or authority in management surveillance to confirm with a signature that a job had been performed satisfactorily. Stack and Leigh, however, had both recently transferred to the quality inspection department and were still in training. And the quality control supervisor Carl Schultz indicates in his deposition that other criteria besides the number of certifications went into his evaluation:

---

**3.** A later case, *Oxman v. WLS–TV*, 12 F.3d 652 (7th Cir.1993), did not alter this approach.

A: I had one person who had recently joined the department from another department who was basically in a learning training mode, so that person was not able to perform as many inspections or anything. But of the qualified certified inspectors, Bob's performance was the weakest.

.    .    .    .    .

Q: I see. Well, who was the person who was the learner?

A: Mr. Timothy Stack.

Q: Why didn't you list him as the weakest performer?

A: He had just recently come into the department and had not gone through the certification qualification process and was not really expected to be a fully functional member of the department at that time.

Q: Well, in fact, however, wasn't he really the weakest performer in the department?

A: That would be relative. I mean, there was only certain things he could do because he wasn't certified in a lot of inspections at that point.

Schultz Deposition, pp. 13–14. Later in his deposition, Schultz made clear that he focused more on the employee's skills and potential than on the number of certifications each held.

Q: So based on the certifications, would you say that he had less certifications—or fewer certifications and, therefore, was less qualified than Bob Sirvidas?

A: He had fewer certifications by virtue of the fact that he had been in the department much less time and, in fact, just recently come into the department and was in a training mode. But I think his skill sets were such that he would have fully certified in the areas we asked him to.

Q: But you didn't know for sure?

A: Didn't know for sure what?

Q: Whether he wouldn't fully certify?

A: I had full confidence that he would.

Q: Well, were there areas in which Bob Sirvidas was more experienced than Richard Leigh in quality inspections?

A: Well, every inspector has their own areas where they have maximum experience. Bob had a lot of experience in mechanical and welding. Other inspectors had experience in electrical or instrumentation or control. They were all relative levels of experience, but the certification is what made them all equal—or relatively equal. They were equally certified as far as being able to be an inspector. Now, within that certification, each one was limited by their skill sets that they possessed within those areas, and that's basically how we rated them.

Schultz Deposition, pp. 42–43.

The Station Manager Thomas Joyce also averred that prior to the compilation of the final list, the committee discussed "the employee's then-current and potential contribution to the location and department; comparative quality of the employee's performance; comparative level of the employee's skills and knowledge, and comparative value and necessity of the employee's job position." Because all of the fully trained inspectors were equally experienced with respect to the number of certifications they held, it is clear that ComEd was more concerned with the individual's overall skill level and potential to grow, even of those still in training. The fact that Sirvidas held more certifications than either Stack or Leigh, therefore, does not undermine the veracity of ComEd's assertion that Sirvidas was terminated because he was the weakest member of the department.

### CONCLUSION

Sirvidas has not come forth with any other evidence to show the pretextual nature of ComEd's reasons for terminating him. Accordingly, the district court's grant of summary judgment is AFFIRMED.