Bettie **SHIVERS**, Plaintiff,

v.

**HONEYWELL, INC.**, Defendant.

No. 95 C 1900.

United States District Court,
N.D. Illinois,
Eastern Division.

May 28, 1996.

Karen Lynn Spence, Cynthia Lynne Hackerott, Herbert H. Victor, Chicago, IL, Herbert H. Victor, Chicago, IL, Katherine M. Anthony, Jennings Law Firm, Chicago, IL, for Bettie Shivers.

Julie Badel, Christine M. Drylie, McDermott, Will & Emery, Chicago, IL, for Honeywell, Inc.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is Defendant Honeywell, Inc.'s ("Honeywell") Motion for Summary Judgment. For the reasons that follow, the court grants the motion and enters judgment in favor of Honeywell and against Plaintiff Bettie Shivers ("Shivers").

1. The following facts are derived from the parties' 12(M) and 12(N) Statements as required by

## I. *Facts* [1]

Shivers is an African–American female born in 1928. Defendant Honeywell hired Shivers in 1963. Shivers is a member of Local 1114, United Electrical, Radio & Machine Workers of America ("Union"). On August 29, 1994, Honeywell terminated Shivers and Paul Carbone ("Carbone"), a Caucasian male over the age of forty, for telephoning another labor union and Burlington Air Express ("Burlington") after being directed not to do so. At the time of her termination, Shivers worked as a Tool Crib Attendant, a job that involved the storage and distribution of parts, but did not involve preparing merchandise for shipping, loading merchandise onto trucks, or making telephone calls to other companies or unions.

At the time of Shivers' termination, Shivers was the Assistant Chief Steward for the Union as well as a member of the Union's executive board. The Chief Union Steward at Honeywell was Lutisha Havard ("Havard"), an African–American female over the age of forty. George Brown, an African American male over forty, was President of Local 1114; however, Brown did not work for Honeywell. The President, Chief Steward, and Assistant Chief Steward positions are elected by Union members. Not all Union members work for Honeywell and Honeywell plays no role in Union functions and activities.

The Union has an established procedure for reporting alleged collective bargaining agreement violations. An employee who witnesses or gains knowledge of a violation must first complain of the violation to the Union steward, who then communicates the problem to the Chief Steward. The Chief Steward prepares a written grievance and files the grievance with the appropriate supervisor. If the Chief Steward is absent or otherwise unable to prepare the written grievance, the Assistant Chief Steward must do so in the Chief Steward's stead.

On August 26, 1994, Havard was absent; thus, Shivers was acting Chief Steward. That morning, Carbone, a Union steward, notified Shivers that the Distribution Cell

Local Rule 12. Counsel are praised for their strict compliance with the Local Rules.

Manager, Terri Brown, "forfeited the contract" on August 25, 1994, by allowing drivers from three carriers, Burlington, DHL and Four Way, to load merchandise into Honeywell trucks after 4:00 p.m. Shivers telephoned the Manager of Distribution, Wayne Schupp ("Schupp"), and told Schupp that she was going to call Local 705, the union which represented employees at Four Way, to complain. Schupp replied, "You better not; I dare you." Shivers then phoned Havard, who in turn told Shivers to call the Director of Operations, Ed Wheeler ("Wheeler"). Shivers called, but was unable to meet with Wheeler.

Notwithstanding Schupp's apparent direction not to call Local 705, Shivers called Local 705 and complained about their union member truck drivers performing work for which Local 1114 members were contracted to perform. Shivers then passed the telephone receiver to Carbone who spoke further with the Local 705 representative. Shivers then obtained the telephone number for Burlington. Shivers dialed the number, identified herself by name and indicated that she was from Honeywell, and asked to speak with a sales representative. The Burlington operator transferred the call to a sales representative, at which time Shivers gave the telephone to Carbone. Carbone then spoke with the representative.

On August 29, 1994, Shivers attended a meeting with Schupp, Havard, George Brown, Terri Brown, Carbone and her immediate supervisor. At that meeting, Shivers' and Carbone's supervisors informed them that they were terminated as a result of them making the call to Burlington against Schupp's orders. Shivers proclaimed that the terminations were unjust but admitted to calling Burlington. Honeywell generated a termination memoranda, which stated:

> On Friday, August 26, 1994, you called and gave a directive to a Honeywell service supplier after being specifically told not to so by Wayne Schupp, Manager of Distribution. This was an insubordinate act. This behavior was totally inappropriate and will not be tolerated. Therefore, effective immediately, your employment with Honeywell is hereby terminated.

Honeywell's Operating Work Rules provide that "Insubordinate Conduct" and "Unauthorized use of Company telephones" are serious offenses for which immediate discharge is appropriate.

The Union filed a grievance on behalf of Shivers and Carbone on August 29, 1995. Havard signed the grievance. Pursuant to the collective bargaining agreement, a "third step meeting" took place on September 15, 1994. The dispute was not resolved. On September 20, 1994, Havard and Terri Brown informed Shivers and Carbone that the Union had agreed not to arbitrate the grievance in exchange for Honeywell's agreement to reinstate Carbone with a fourteen-day suspension; yet, Honeywell did not agree to reinstate Shivers due to her disciplinary record. Compared to Carbone, who had only one instance of prior discipline, Shivers had eleven documented incidents of insubordination for which she was suspended three times. The decision to arbitrate a grievance is made by the Union. Honeywell has no involvement in that decision.

Shivers then filed a claim with the Equal Employment Opportunity Commission, which then authorized her to bring suit in federal court. Shivers filed a three-count Complaint, alleging that she was terminated based on her race, gender and age. Honeywell now moves the court to summarily grant judgment in favor of it and against Shivers.

## II. *Discussion*

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Salima v. Scherwood South, Inc.*, 38 F.3d 929, 931 (7th Cir.1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The summary judgment "standard is applied with added rigor in employment discrimination cases,

where intent and credibility are crucial issues." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir.1993). Yet, the standard does nothing to alter the burden of proof. "If the non-moving party bears the burden of proof on an issue, ... that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact." *Sample v. Aldi, Inc.*, 61 F.3d 544, 547 (7th Cir.1995). The court must view the "record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party." *Id.* at 546.

■ The court now turns its attention to the merits of Defendant Honeywell's motion. In general, an employee may be terminated for "any reason, good or bad, or for no reason at all, as long as the employer's reason is not proscribed by a Congressional statute." *Kahn v. U.S. Secretary of Labor*, 64 F.3d 271, 279 (7th Cir.1995). The Age Discrimination in Employment Act ("ADEA") and Title VII are examples of such proscriptive statutes. The ADEA[2] makes it unlawful for employers to engage in the following conduct:

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or (3) to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. § 623(a). The prohibitions under ADEA are limited to those who have attained the age of forty or older. 29 U.S.C. § 631(a); *Collier v. The Budd Co.*, 66 F.3d 886, 889 n. 2

(7th Cir.1995). Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice to use an employee's race or gender as a ground for an employment decision, 42 U.S.C. § 2000e–16(a), and to discharge an employee for opposing "any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e–2(a)(1), –3(a).

In proving employment discrimination, Shivers may either present direct evidence of discrimination or follow the burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). *Sample*, 61 F.3d at 547. Shivers relies on the *McDonnell Douglas* burden-shifting method of proof.

■ Shivers must therefore establish a *prima facie* case of race, gender, and age discrimination. The United States Supreme Court recently altered the *prima facie* case with regard to the ADEA. *See O'Connor v. Consolidated Coin Caterers Corp.*, —— U.S. ——, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). The Supreme Court held that an ADEA plaintiff need not show that he or she was replaced by a person outside of the protected class as part of a *prima facie* ADEA case. The Seventh Circuit carried the *O'Connor* decision into the realm of Title VII by holding that "[a]n employee may be able to show that his race ... tipped the scales against him, without regard to the demographic characteristics of his replacement." *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157 (7th Cir.1996). Now, to establish a *prima facie* employment discrimination case, Shivers must show that: (1) she is a member of the applicable protected class; (2) she was performing her work well enough to meet Honeywell's legitimate expectations; and (3) she was terminated. *Roper v. Peabody Coal Co.*, 47 F.3d 925 (7th Cir.1995) (as modified by *Carson* ).

---

**2.** Congress enacted the ADEA primarily to "promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). "The ADEA, enacted in 1967 as part of an ongoing congres-

sional effort to eradicate discrimination in the work place, reflects a societal condemnation of invidious bias in employment decisions. The ADEA is but part of a wider statutory scheme to protect employees in the work place nationwide." *McKennon v. Nashville Banner Publishing Co.*, —— U.S. ——, ——, 115 S.Ct. 879, 881, 130 L.Ed.2d 852 (1995).

Once Shivers establishes a *prima facie* case, a rebuttable presumption is created that the employer's decision not to promote Shivers was based on the "consideration of impermissible factors." *DeLuca v. Winer Indus.*, 53 F.3d 793, 797 (7th Cir. 1995). Therefore, "the burden of production [—not proof—] then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action." *Sirvidas v. Commonwealth Edison Co.*, 60 F.3d 375, 377–78 (7th Cir.1995). "If a legitimate explanation is provided, the presumption of discrimination dissolves, and the burden shifts back to the plaintiff to show that the employer's proffered reasons are a pretext for [race, gender, and] age discrimination." *Id.* at 378. Thus, the ultimate burden of persuasion rests with, and never shifts from, the plaintiff at every point in the litigation process. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 508–11, 113 S.Ct. 2742, 2748–49, 125 L.Ed.2d 407 (1993).[3] Plaintiff must prove that she would not have been discharged "but for" Honeywell's motive to discriminate against her because of her race, gender, and age. *Karazanos v. Navistar Int'l Trans. Corp.*, 948 F.2d 332, 335 (7th Cir.1991) (quoting *La Montagne v. American Convenience Prods., Inc.*, 750 F.2d 1405, 1409 (7th Cir.1984)); *see also Aungst v. Westinghouse Elec. Corp.*, 937 F.2d 1216, 1219 (7th Cir.1991).

In its motion, Honeywell argues that Shivers has not established a *prima facie* case. According to Honeywell, Shivers cannot satisfy the second and fourth prong of the *prima facie* case. Shivers has shown that, at the time of termination, she was an African–American female over the age of forty. Further, Shivers was terminated. Therefore, Shivers satisfied the first and third prongs. With regard to the fourth

prong, the court notes that since the date both parties submitted the appropriate memoranda to the court, the United States Supreme Court and the Seventh Circuit seem to have eliminated the fourth prong of *prima facie* case. *See O'Connor,* —— U.S. ——, 116 S.Ct. 1307; *Carson,* 82 F.3d 157. Moreover, the court finds that Shivers satisfied the second prong. Shivers produced enough evidence from which a genuine issue of material fact arises. Shivers worked for Honeywell for almost thirty-one years. Moreover, Shivers testified that her performance was satisfactory. Such self-serving testimony does satisfy the *prima facie* performance element. *Williams v. Williams Elec.*, 856 F.2d 920, 923 n. 6 (7th Cir.1988). While this evidence is in stark contrast to the evidence submitted by Honeywell, including Shivers' extensive disciplinary record, frequent warnings and numerous suspensions, a factual issue does exist. Thus, the court finds that Shivers successfully established a *prima facie* case of age, race and gender discrimination.

In response to the *prima facie* case, Honeywell articulated a legitimate, non-discriminatory reason for terminating Shivers: Honeywell terminated Shivers for making unauthorized telephone calls to Local 705 and Burlington. Since Honeywell articulated a reason sufficient to meet its burden of articulation, Shivers must provide the court evidence to raise a genuine issue of fact as to whether Honeywell's purported reason for terminating her was "phony." Shivers must show that Honeywell does not "honestly believe in the reasons it offers [to justify the non-selection], not whether [Honeywell] made a poor business decision." *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1145 (7th Cir. 1994). Summary judgment is inappropriate if Shivers provides "enough evidence from

---

**3.** As observed by Judge Posner in *Russell v. Acme–Evans Co. et al.,* 51 F.3d 64, 70 (7th Cir. 1995), the court recognizes that this asymmetrical burden places discrimination plaintiffs at a disadvantage. This disadvantage may be particularly poignant where, as here, the plaintiff faces a highly-funded and bureaucratic opponent.

As in *Russell,* this court does *not* find that Honeywell did not discriminate against Shivers; rather, it finds that Shivers has failed to present sufficient evidence to defeat the motion. *See id.* Still, as noted in *Russell:*

[T]here is nothing within our power ... that would lighten the burden of the employee without depriving the employer of procedural rights conferred upon him by settled law. And these procedural rights are not to be thought merely irksome obstacles to truth and justice. They are necessary to distinguish the real from the spurious cases of discrimination.

*Id.* at 71.

which a reasonable fact-finder could infer that [Honeywell's] proffered reasons for terminating [her] were false and that she was actually [fired] because of her [race, gender and age]." *Sirvidas,* 60 F.3d at 378.

The record is devoid of any evidence to support Shivers' contention that Honeywell fired her due to her age, race and gender. No evidence has been provided—or even alluded to—to give rise to an inference that discrimination played a part in her termination. Shivers submitted no evidence to show that a Honeywell employee made discriminatory slurs, or expressed bias, to or about her; she submitted no evidence to show Honeywell has a policy of firing African–Americans, women, or employees over the age of forty; she provided no statistical data to show disparate treatment or impact of a particular protected class. Instead, Shivers simply makes a conclusory argument that because Carbone was reinstated, and since Carbone was a Caucasian male over the age of forty, that the only "possible" reason that she was not reinstated was because of her age, gender and race. Such conclusory statements based on speculation and conjecture cannot defeat a summary judgment motion. *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1572 (7th Cir.1989). Moreover, this argument flies in the face of the facts: Shivers' Union (of which she was an Assistant Chief Steward), not Honeywell, made the decision not to arbitrate her grievance and thus not to contest her termination. Additionally, the Union's decision was reasonable: Carbone's disciplinary record consisted of ten fewer instances of misconduct than did Shivers.

Shivers argument also conflicts with the well-documented evidence showing that Shivers knew she was not supposed to make telephone calls on the job and was directed— or at least "dared"—not to call Local 705 by her superior. Despite the company rules and the directive from her supervisor, Shivers made phone calls to Burlington or Local 705. Shivers' disobedience resulted in termination.

### III. *Conclusion*

Shivers has not provided evidence from which a reasonable jury could infer that Honeywell's alleged reasons for firing her were a subterfuge for race, gender and age discrimination. Accordingly, the court must grant Honeywell's motion for summary judgment.

IT IS SO ORDERED.