**Carl E. THOMAS, Plaintiff,**

v.

**METRA RAIL SERVICE, Defendant.**

**No. 96 C 2160.**

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 22, 1996.

Carl E. Thomas, Flint, MI, pro se.

Sue–Ann Rosen, Raymond E. Belstner, Joann Caracci Pelka, Dorothy Gibson Matthews, Metra, Chicago, IL, for defendant.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is Defendant's Motion for Summary Judgment. For the reasons set forth in this memorandum, the motion is granted.

### I.[1]

.Defendant Metra Rail Service ("Metra"), formally known as the Northeast Illinois Regional Commuter Railroad Corporation, fired Plaintiff Carl E. Thomas ("Thomas") on September 8, 1993. Metra contends that it fired Thomas, a Ticket Sales Clerk for Metra, because he failed to remit moneys collected from ticket sales. Thomas, a *pro se* litigant, argues that Metra terminated him in retaliation for a charge of discrimination filed in 1990 with the Equal Employment Opportunity Commission ("EEOC"). Thus, Thomas initiated this lawsuit by filing the Complaint. The Complaint alleges violations of Title VII of the Civil Rights Act and 42 U.S.C. § 1981.

Thomas became a Ticket Sales Clerk for Metra in 1988. Thomas' duties included selling tickets to passengers and remitting the moneys received from the passengers to Metra. On September 1, 1993, Thomas' supervisor, R.R. Mielzynski ("Mielzynski"), served upon Thomas a formal investigation notice, which stated:

> The purpose of this investigation is to develop the facts, determine the cause, and assess responsibility, if any, in connection with your alleged falsification of corporation documents relating to the return of your August, 1993, monthly ticket. Specifically, wherein you reported you were re-

---

1. The following facts are derived from the parties' Statements of Material Facts, which were filed pursuant to Local General Rules 12(M) and 12(N).

turning Zone A to G monthly ticket # 690845 and Zone A to H monthly ticket # 694288 unsold, and your alleged failure to properly remit monies received from your total ticket sales of August 2, 1993 discovered on August 31, 1993 in conversations with customers who purchased the aforementioned tickets from you while you were assigned a Ticket Sales Clerk position at Union Station on August 2, 1993.

The value of the tickets for which Thomas allegedly did not remit moneys to Metra was $230.85.

Pursuant to the respective collective bargaining agreement between Metra and Thomas' union, Metra conducted an investigation hearing on September 3, 1993. At the hearing, Thomas had legal representation provided by his union, and had the opportunity to solicit testimony from and cross-examine witnesses. Thomas also had the opportunity to present his own version of the facts.

The investigation proceeding revealed many important facts. On August 20, 1993, Thomas' assistant supervisor received a call from the "lead revenue clerk," who reported to the assistant supervisor that certain tickets were missing from the unsold ticket stock returned by Thomas. The assistant supervisor forwarded the complaint to the Ticket Services division for review, which turned the complaint over to the Department of Revenue Accounting. The Department of Revenue Accounting confirmed the underlying facts of the complaint against Thomas, as did the Audit Department on a subsequent review. The reviews by both the Department of Revenue Accounts and the Audit Department determined that Thomas sold more tickets than he reported and returned to Metra, thus profiting from the money given to him by customers for the unreported and unreturned tickets. The determination was made through examination of accounting records and discussion with commuters who purchased the tickets identified on Thomas' report as unsold. Thomas contended at the hearing that Metra never issued the alleged "stolen tickets" to him, but attorneys for Metra submitted an invoice sheet and other

records showing that the tickets were, in fact, assigned to Thomas.

At the completion of the hearing, Mielzynski, Thomas' ultimate supervisor, concluded that Thomas violated Metra policy in failing to remit the ticket funds. Mielzynski terminated Thomas' employment with Metra.

Thomas appealed the termination to the Public Law Board ("PLB"), an appellate review panel established in accordance with the Railway Labor Act. The PLB has the authority to conduct hearings to determine whether sufficient evidence existed to support the disciplinary action taken by Metra. The PLB may reduce the type of punishment if it deems the punishment too severe. Pursuant to the collective bargaining agreement, both Thomas and Metra are bound by the PLB's findings.

The PLB reviewed the investigation transcript and relevant documents submitted by Metra and Thomas' union. On December 27, 1995, the PLB affirmed the termination, finding that the undisputed facts established that Thomas failed to remit funds in violation of Metra rules.

Metra records show that it systematically terminates employees of all races found to have failed to report receipt of monies. For example, on April 1, 1992, Metra dismissed Victor Ahramovich, a caucasian male, for "giving away" tickets valued at approximately $210.00. On April 8, 1994, Metra terminated Andrew Selep, a caucasian male, for failing to report receipt of monies in the amount of $42.95. On April 19, 1994, Metra terminated Giuseppe Lucente, a caucasian male, for failing to report properly the receipt of monies from a conductor in the amount of $74.20. On May 22, 1995, Metra terminated Silvio Berlongieri, a caucasian male, for falsifying corporate documents and failing to remit funds in the amount of $180.00.

## II.

■ At the outset, the court notes that there are two counts in Thomas' Complaint, brought under both Title VII and 42 U.S.C. § 1981, alleging that Metra terminated Thomas in retaliation for a charge of discrim-

ination which he filed with the EEOC in 1990 ("1990 Charge"). The Complaint does not, and cannot, include an allegation that Metra fired Thomas because of his race. In the charge of discrimination giving rise to the instant lawsuit (filed on April 19, 1994) ("1994 Charge"), Thomas contends that "persons who have not filed charges against the company and had tickets missing from their stock were not disciplined or discharged." Because Thomas did not include a race discrimination grievance in the 1994 Charge, Thomas waived any right to bring suit on that basis. *Movement for Opportunity & Equality v. General Motors Corp.*, 622 F.2d 1235 (7th Cir.1989). Accordingly, the Complaint is limited to retaliatory discharge claims for relief. *Id.*

### III.

Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *GCIU Employer Retirement Fund v. Chicago Tribune Co.*, 66 F.3d 862, 864 (7th Cir. 1995). When considering a motion for summary judgment, the court may review the entire record, drawing all reasonable inferences from the record in the light most favorable to the non-moving party. *Cornfield by Lewis v. School Dist. No. 230*, 991 F.2d 1316, 1320 (7th Cir.1993). The burden of establishing the lack of any genuine issue of material fact rests with the movant. *Jakubiec v. Cities Serv. Co.*, 844 F.2d 470, 473 (7th Cir.1988).

The party opposing the motion, however, must make a showing sufficient to establish any essential element for which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The opposing party cannot rest on the pleadings alone, and must do more than simply "show there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); it must identify specific facts which establish that there is a genuine triable issue. *Cornfield*, 991 F.2d at 1320. It is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *Covalt v. Canada, Inc.*, 950 F.2d 481, 485 (7th Cir.1991); *Collins v. Associated Pathologists, Ltd.*, 844 F.2d 473, 476–77 (7th Cir.1988). Motions for summary judgment in employment discrimination cases "must be decided with particular care, given the extent to which the merits often turn on questions of credibility and intent." *Veprinsky v. Daniel, Inc.*, 87 F.3d 881, 893 (7th Cir.1996).

### A. Title VII Count

It is well-established that an employee may be terminated for "any reason, good or bad, or for no reason at all, as long as the employer's reason is not proscribed by a Congressional statute." *Kahn v. U.S. Sec. of Labor*, 64 F.3d 271, 279 (7th Cir.1995). Title VII is an example of such a statute. Title VII makes it illegal for an employer "to discharge any individual ... because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2(a)(1), or "for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]," 42 U.S.C. § 2000e–3(a).

It is also axiomatic that Thomas may support a claim for retaliation "either through direct proof of discriminatory [or retaliatory] intent, or through the indirect, burden-shifting method of proof first elaborated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Zuckerstein v. Argonne Nat'l Lab.*, 984 F.2d 1467, 1472 (7th Cir.1993). For lack of direct evidence, Thomas must proceed with the *McDonnell Douglas* burden-shifting method of proof.

Under the familiar burden-shifting method, Thomas must first establish a *prima facie* case of retaliation. A *prima facie* case of retaliation is set forth when Thomas demonstrates that "(1) [he] engaged in statutorily protected expression; (2) [he] suffered an adverse action by her employer; and (3) there was a causal link between the protected expression and the adverse action." *Alexander v. Gerhardt Enters., Inc.*, 40 F.3d 187,

195 (7th Cir.1994). Once Thomas establishes a *prima facie* case, Metra must produce evidence of a legitimate, non-discriminatory reason for the adverse action. *Sirvidas v. Commonwealth Edison Co.*, 60 F.3d 375, 377–78 (7th Cir.1995). "If a legitimate explanation is provided, ... the burden shifts back to the plaintiff to show that the employer's proffered reasons are a pretext for ... discrimination." *Id.* at 378. "Pretext ... means a lie, specifically a phony reason for some action." *Russell v. Acme–Evans Co.*, 51 F.3d 64, 68 (7th Cir.1995).

■ The court finds that Thomas has not established a *prima facie* case of retaliatory discharge. Metra concedes that the first two *prima facie* elements exist; Thomas filed the 1990 Charge, and Metra terminated Thomas. However, the third element, the "causal link" element, is nonexistent and unproven. In order to demonstrate the "causal link," Thomas must demonstrate that Metra would not have taken the adverse action "but for" the protected expression. *Johnson v. University of Wisc.–Eau Claire*, 70 F.3d 469, 479 (7th Cir.1995). Thomas may establish a causal link through evidence that the discharge took place "on the heels of the protected activity." *Alexander v. Gerhardt Enters., Inc.*, 40 F.3d 187, 196 (7th Cir.1994). In other words, "a telling temporal sequence can demonstrate this causal link." *Id.*

■ Yet, such a temporal connection does not exist here; Metra terminated Thomas in 1993, three years after Thomas filed the initial 1990 Charge. A three year gap between filing and firing does not constitute a temporal link. Thus, Thomas is left without any evidence to support his claim. Metra does not dispute that Thomas filed the 1990 Charge, and that it fired Thomas in 1993. However, Thomas has shown nothing more. The record is devoid of any facts from which a reasonable trier of fact could construct a bridge linking the two occurrences. Simply put, Thomas has failed miserably in his burden of proof; he has not provided a scintilla of evidence to create an inference of discrimination. Thomas' Title VII claim for relief is wholly without merit. Instead, the facts show that Metra fired Thomas because Thomas stole money from the corporation.

Since there is no relation between the 1990 Charge and the termination, the court grants judgment in favor of Metra and against Thomas.

■ Had the court not determined that Thomas failed to establish a *prima facie* case, it would have nevertheless granted judgment in Metra's favor. Shifting the burden of production to Metra, Metra articulated a legitimate, non-discriminatory reason for terminating Thomas: Thomas sold tickets, collected $230.85, but neglected to remit the moneys to Metra. The burden then shifts back to Thomas.

Thomas, however, has not met this second burden either. The totality of the record supports Metra's reason for termination. Metra braces its explanation with the affidavit of its Director of Labor Relations, the transcript of the investigation hearing, the decision of the PLB, and the findings made by its Departments of Revenue Accounting and Audits. Evidencing the complete lack of merit of the claim, Thomas failed to render the court any evidence supporting his contention that Metra's reason for terminating him was a subterfuge for firing him because of the earlier 1990 Charge. Without such evidence, there can be no finding that a genuine issue of material fact exists. Again, Metra fired Thomas for stealing, and Thomas provided no evidence to cast a doubt on the well-documented and logical reason for his termination. Accordingly, had the court found a *prima facie* case established, it would nevertheless had entered judgment in favor of Metra and against Thomas.

### B. 42 U.S.C. § 1981 Count

Metra also moves for summary judgment as to the count brought under 42 U.S.C. § 1981. Metra contends that Thomas was too late in initiating the § 1981 action. The court agrees.

■ It is well-settled that "the applicable limitations period for actions brought under 42 U.S.C. § 1981 ... in federal court in Illinois is Illinois' two-year statute of limitations for personal injury actions." *Smith v. Chicago Heights*, 951 F.2d 834, 839 (7th Cir. 1992). Filing a charge of discrimination with

the EEOC does not toll the two year statute of limitations. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 466, 95 S.Ct. 1716, 1723, 44 L.Ed.2d 295 (1975); *Cheeney v. Highland Community College,* 15 F.3d 79, 82 (7th Cir.1994). According to Thomas' Complaint, Metra discharged him on September 8, 1993. Thus, the original act of discrimination occurred on that date. The statute of limitations begins to run as of the date Thomas discovers "the original act of discrimination, not future confirmation of the injury or determination that the injury is unlawful." *Soignier v. American Bd. of Plastic Surgery,* 92 F.3d 547, 551 (7th Cir. 1996). Metra hand-delivered the letter formally terminating Thomas on September 8, 1993; Thomas "discovered" his termination on that date. Therefore, Thomas had two years from September 8, 1993, to file a Complaint alleging violations of § 1981. He did not do so. Instead, Thomas waited until April 12, 1996, over seven months after the limitations period ended. As a result of the tardiness of the Complaint, Thomas is forever barred from pursuing a § 1981 action based upon the September 8, 1993, termination. Accordingly, the court grants Metra's motion with regard to the § 1981 count.

## IV.

Metra terminated Thomas for stealing. Unhappy with the Public Law Board's conclusion that he violated railroad and Metra rules, he sought a form of appellate review in this court. Yet, Thomas has no facts to buttress his meritless claims. Accordingly, the court enters judgment against Thomas and in favor of Metra. The court denies Thomas' motion for summary judgment [Doc. # 24] as moot. After an expensive, time-consuming, and complex procedure, Metra now prevails in its effort to end the career of a petty thief on its payroll.

IT IS SO ORDERED.